STATE v. WALTER DAVIS.

(Filed 5 May, 1909.)

1. False Pretense—Indictment—Proof—Variance—Instructions.

When the indictment charged that defendant induced an exchange of horses with another by means of false and fraudulent representations. the jury should be instructed, when the evidence is directed to. a different defense and there is no evidence of such representations, that there was fatal variance between the allegation and proof.

2. False Pretense—"Calculated to Deceive"—Evidence—Instructions.

When the evidence, considered in the light most favorable to the State, on a trial for obtaining goods by false pretenses, tends only to show that the prosecutor has once been deceived by defendant in a horse trade, returned the horse and refused to take others because defendant refused to warrant any of his horses, and, finally, without examining him, ordered a certain other horse to be sent to his stable upon the guarantee of defendant that the horse was sound and all right, and as soon as the horse was examined by the prosecutor the defect complained of was so patent as to be noticed at once, it is not sufficient as showing a false representation, "calculated to deceive," and it was error in the trial judge to refuse defendant's requested instructions, that if the jury believed the evidence they should render a verdict of not guilty.

INDICTMENT for obtaining goods by false pretenses, tried before *Councill, J.,* and a jury, at February Term, 1909, of GASTON.

There was verdict of guilty, and from judgment on the verdict defendant appealed.

*Attorney-General* for the State.

*George W. Wilson, Tillett & Guthrie, O. M. Gardner* and *S. B. Sparrow* for defendant.

HOKE, J. The charge in this bill of indictment was, in substance, to the effect that the defendant, by means of false and fraudulent representations in reference to the qualities of a certain sorrel horse, obtained from the prosecutor, G. E. Ford, a claybank mare, in good condition, sound and gentle, and worth $225. The proof on the part of the State tended to show that

the claybank mare was obtained by defendant in exchange for a bay "saddle horse," and in reference to this trade there was no charge, or evidence tending to support it, that the exchange was effected by means of false representations. Under the authorities cited, there would seem to be a clear case of variance between the allegation and the proof, and the jury should have been so instructed. *State v. McWhirter,* 141 N. C., 809; *State v. Corbett,* 46 N. C., 264. Apart from this, there was no sufficient evidence presented in the case to sustain a conviction of the offense charged or to justify the submission of the question to the jury. Considering the proof offered in the light most favorable to the prosecution, it appears that, after the exchange of the mare for the bay horse, the prosecutor, having kept the horse about a week, became dissatisfied and sent him back to defendant's stable, with a message that the horse did not suit, and that he would call to see defendant about it later; that the prosecutor did call, and told defendant that the horse taken in exchange for the mare was not sound and he wished to set aside the trade. The defendant declined to do this, but offered to let the prosecutor have another horse if he could suit him, and showed prosecutor one of the horses in the stable. Prosecutor asked defendant if he would guarantee the horse to be sound and all right. Defendant replied he would not, nor would he guarantee any horse in his stable to be sound and all right. Prosecutor replied, "Well, if you won't you can keep both horses," and started away. Davis then said, "How do you like that sorrel horse there in the wagon?" "Will you guarantee that to be sound and all right?" Defendant replied, "No, I will not guarantee any horse, nor a hair on any horse I have, to you;" and prosecutor replied, "Then I don't want it," and started off. When he had gotten away, about thirty yards, defendant said, "If you think the sorrel horse will suit you, I will guarantee him to be sound and all right in every way, and a good worker," and prosecutor said, "Well, then, send it down." The horse was sent, and at dinner time prosecutor went out to his stable to make examination of it, and discovered that it was either blind or had such deficient eyes that it could not see its

way in traveling. On cross-examination prosecutor said that, while not a horse trader, he did trade horses sometimes, and was a fair judge of a horse.

In *State v. Phifer,* 65 N. C., 321, it is said: "This crime of obtaining goods by false pretense is said to exist where there has been a false representation of a subsisting fact which is calculated to deceive, intended to deceive, and which does deceive, and by which one man obtains value from another without compensation." And this definition, in the same or substantially similar terms, has been approved with us in numerous decisions of the Court. Speaking of this offense, and more especially of the requirement that the statement must be "calculated to deceive," in *State v. Moore,* 111 N. C., 672, *Associate Justice Avery,* for the Court, said: "As well in civil actions, brought to recover of another for losses incurred by false representations, as in criminal prosecutions founded upon the same species of fraud, the burden is on the actor or prosecutor to show, not only the false representation, but that a reasonable reliance upon its truth induced the plaintiff or prosecutor to part with his money or property, the only difference being as to the *quantum* of proof."

There was evidence on the part of defendant tending to exculpate him entirely from the charge; but, considering the testimony in the light most favorable to the State, we do not think the facts bring the case within the principle of these decisions. Claiming to have been already once deceived by defendant, the prosecutor, standing in a few feet of the horse in question, and after having been twice told that no warranty would be given, without making any examination whatever, directs that the animal be sent to his stables on a guarantee by defendant that the horse is sound and all right, and when the alleged defect is so observable and patent that it was at once noticed as soon as the horse was looked at. It is plain that the prosecutor intended to rely on the pecuniary obligations arising by reason of an express warranty, and that the testimony in no sense presents a case of false representations of a subsisting fact reasonably relied upon by the prosecutor. We must not be understood as holding that the presence of an express warranty in a horse trade of itself

protects one from liability to a criminal prosecution under the statute if the facts otherwise justify it, but a careful consideration of all the facts of this transaction leads to the conclusion that no indictment should be sustained. The case comes under the principle announced and sustained in *State v. Moore, supra,* and, on the testimony as it now appears, the defendant was entitled to the instruction prayed for, "That if the jury believed the evidence they should render a verdict of not guilty."

New Trial.