STATE v. S. A. GIBSON.

(Filed 22 April, 1915.)

**1. Criminal Law—Indictment—Proof—Variance—Constitutional Law.**

The evidence must, at least in substance, correspond with the charge of an indictment for a criminal offense, and sustain it in order to convict the defendant, as he has the constitutional right to be informed of the accusation against him. Const., Art. I, secs. 11, 12, and 13.

**2. Same—Note—Money—Nonsuit—Interpretation of Statutes.**

The indictment for false pretense must describe the thing alleged to have been thereby obtained with reasonable certainty, and by the name or term usually employed to describe it; and where the indictment charges obtaining money by a false pretense, and the State's evidence tends only to show that the defendant had obtained the signature of the prosecutor as an indorser or surety to a negotiable instrument under the assertion that others, whose financial responsibility was known to him, had promised to sign, as cosureties, and should sign before negotiation, which was in all respects false; that the defendant obtained money thereon from the bank with his signature alone, which he had been forced to take up with his own note, there is a fatal variance between the charge and the proof, and defendant's motion to nonsuit should be sustained. Laws 1913, ch. 73.

**3. Same—Motions—Arrest of Judgment—Amendments.**

The State must prove the charge of a criminal offense as laid in the bill, without power to amend against the will of the defendant; and where the charge is made of obtaining money under a false pretense, and the evidence tends only to show that a note has been obtained, a motion to nonsuit is the proper method of raising the question of variance (Laws 1913, ch. 73.), and a motion in arrest of judgment should be denied.

**4. Criminal Law—Indictments—Variance—New Indictment.**

Where an indictment for a false pretense in obtaining money has failed on account of a variance in the proof tending to show that a signature to a note had been thus obtained, it is open to the State, upon another and proper indictment, to convict for the offense of obtaining the signature by false pretense, under Revisal, sec. 3433; and should the solicitor send another bill with averments agreeing with the proof, the trial court may hold the defendant to answer this indictment.

APPEAL by defendant from *Lyon, J.,* at August Term, 1914, of ROCK-INGHAM.

The defendant was charged in the court below with obtaining money under false pretenses, upon the following indictment:

The jurors for the State, upon their oaths, present: That S. A. Gibson, late of the county of Rockingham, wickedly and feloniously devising and intending to cheat and defraud William S. Martin, on the 23d day of October, A. D. 1912, with force and arms at and in the county aforesaid, unlawfully, knowingly, designedly, and feloniously did unto William S. Martin falsely pretend that Thomas Knight, T. H. Barker, and A. F. Tuttle had consented to become sureties for said S. A. Gibson on a note for the sum of $350, and that he, said S. A. Gibson, had to get another on the note with said Thomas Knight, T. H. Barker, and A. F. Tuttle, and that their signatures would be secured on said note before its transfer or disposal. Whereas, in truth and in fact, said Thomas Knight, T. H. Barker, and A. F. Tuttle had not consented to become sureties for said S. A. Gibson on a note for $350. By means of which said false pretense he, the said S. A. Gibson, knowingly, designedly, and feloniously did then and there unlawfully obtain from the said William S. Martin the following goods and things of value, the property of William S. Martin, towit, $350, with intent then and there to defraud, against the statute in such case made and provided, and against the peace and dignity of the State.

S. P. GRAVES,<br>
*Solicitor.*

W. S. Martin, the prosecutor, testified: "At the time of the alleged offense I lived in the town of Leaksville, Rockingham County, and was engaged in the livery business. The defendant came to me at my office and asked me to go on his note with T. H. Barker, Thomas Knight, and Dr. Tuttle, for the sum of $350; that he, S. A. Gibson, had seen Barker, Knight, and Tuttle, and that they had agreed to sign the note with me. I told Gibson to get the other men to sign it and I would sign it. Gibson said he wanted to use the note that evening, and that if I would sign it then, he would go immediately and get the signatures of the others. I knew T. H. Barker, Thomas Knight, and Dr. Tuttle; they were residents of the same town, and I knew of their solvency. The note was to run three months, being dated 23 October, 1912. I would not sign the note alone, and relied upon the statement made to me by the defendant, that the three parties named had promised to become sureties or indorsers thereon. Upon these representations made to me by the defendant, I signed the note and never knew but that they were sureties thereon until I was notified by the Bank of Leaksville, in which the note had been discounted, of its maturity, and a demand was made upon me for payment thereof, when I discovered that my name alone appeared as surety, none

of the others, Barker, Knight, nor Tuttle, having signed it.  I took up the note upon demand of the bank, by the renewal thereof in my own name, and became solely responsible for its payment."  There was evidence by three witnesses, A. F. Tuttle, Thomas Knight, and F. T. Barker, that they had not promised or agreed to sign the note as sureties, and no one of them had promised to sign it as surety.  There was also further evidence as to how the note was taken up in the bank by the prosecutor.

The defendant moved for a nonsuit under the statute (Public Laws 1913, ch. 73) because the State had failed to make out a case against the defendant upon all the evidence.  The motion was overruled, and defendant excepted.  There was a verdict of guilty.  Defendant moved in arrest of judgment.  Motion overruled.  Judgment on the verdict, and defendant appealed.

*Attorney-General Bickett and Assistant Attorney-General Calvert for the State.*

*P. W. Glidewell and Manning & Kitchin for defendant.*

WALKER, J., after stating the case:  It is an elementary rule in the criminal law that a defendant must be convicted, if at all, of the particular offense alleged in the bill of indictment.  He has the constitutional right to be informed of the accusation against him, "by indictment, presentment, or impeachment," and no person shall be convicted of any crime but by the unanimous verdict of a jury upon the charge so made.  Const., Art. I, secs. 11, 12, and 13.  The evidence, therefore, must correspond with the charge and sustain it, at least in substance, before there can be a conviction.  The defendant contends that the evidence in this case does not so correspond with the charge, and does not, in law, support it, but that there is a fatal variance between the two.  If this be so, the verdict was wrong and cannot stand.  He is charged in the bill with obtaining money, towit, $350, by a false pretense, while the proof tends to show only that, while he made the false representation knowingly and corruptly, he did not obtain money by reason thereof, but was induced to part with the note, which he signed for the defendant, and which he afterwards "took up" with another note signed also by himself, and that he has never paid any money on the note, and certainly none to the defendant.  All the defendant got was a note signed by the prosecutor; how it was done and to whom payable does not appear.  The defendant never got any money from the prosecutor.  What he did get, we presume, was paid by the bank to him.  There was a fatal variance between the allegation in the bill and the proof.  It is the general rule that the thing obtained by the false pretense, as in the case of the thing stolen in larceny, must be described with reasonable certainty, and by the name or term usually employed to describe it.  McLain's Cr. Law, sec. 595;

*S. v. Reese,* 83 N. C., 637.   A promissory note must be described as such, and not as money.   3 Bish. New Cr. Proc., p. 1691, sec. 732 (3).   We never properly speak of such a note as "money" or as "so many dollars." Money is any lawful currency, whether coin or paper, issued by the Government as a medium of exchange, and does not embrace within its meaning a note given by one individual to another or otherwise put in circulation.   Our statute in regard to larceny, embezzlement, and false pretenses makes the distinction clearly and unmistakably.   It makes indictable the obtaining by a false token or other false pretense any *"money,* goods, property, or other thing of value, or any bank note, check, or order for the payment of money, issued by or drawn on any bank or other society or corporation within this State, or any of the United States, or any treasury warrant, debenture, certificate of stock, or public security, or any order, bill of exchange, bond, promissory note, or other obligation, either for the payment of money or for the delivery of specific articles, with intent to cheat or defraud any person or corporation."   Revisal, sec. 3432.   It will be seen from this provision of the statute that it classifies those things the obtaining of which by a false pretense is made criminal, and carefully distinguishes between them, and assigns to each its own proper name and designation, as something separate and distinct from the others.   It was held in *Com. v. Howe,* 132 Mass., 250, 258, that an averment of obtaining a sum of money by false pretense is not supported by proof of obtaining a certificate of deposit of a bank, as the property should have been more accurately described and by its usual name, and that variance was not cured by their statute of jeofails and amendments.   And to like effect it was held in *Carr v. State,* 104 Ala., 43, that to warrant a conviction under an indictment which charges the defendant with having embezzled or fraudulently converted to his own use money, the evidence must show that the money came into the possession of the defendant; and the proof that the defendant received only a check, and not money, will not sustain a verdict of guilty.   Illustrations of the strictness of the rule may be found in many of the cases on the subject.   *Berrien v. State,* 83 Ga., 381, where it was held that an indictment for falsely and fraudulently mortgaging a "dark bay mare mule" was not supported by proof that the defendant mortgaged a "mouse-colored mare mule named Mag," as he would not be protected by an acquittal or conviction in a future indictment for having fraudulently mortgaged a mule of the latter description.   *Barclay v. State,* 55 Ga., 179.   Also as to a like variance in the description of a note.   Wallace, 79 Tenn., 542.   And as to a fatal variance between a description of "United States legal tender notes" and "National bank notes."   *People v. Jones,* 5 Lansing (N. Y.), 340.   To same effect, *Harris v. State,* 30 S. W., 221.   In *Com. v. McMarriman,* 15 Pa. Co. Ct. Rep., 495, the

charge that defendant robbed the prosecutor of a promissory note was held not sustained by proof that he robbed him of "money" or "so many dollars." That is our case with the terms reversed, and the rule should apply conversely. Where the defendant was charged with obtaining a clay-bank mare by a false pretense as to the qualities of a "sorrel horse," and the proof was that he got a "saddle horse," we held it to be a material variance, *Justice Hoke* saying that, "under the authorities, there would seem to be a clear case of variance between the allegation and the proof, and the jury should have been so instructed." *S. v. Davis,* 150 N. C., 851, citing *S. v. McWhirter,* 141 N. C., 809 ; *S. v. Corbitt,* 46 N. C., 264. So it was held in *S. v. Hill,* 79 N. C., 256, that a charge that defendant had injured a "cow" was not proved by showing an injury to an "ox." See, also, *S. v. Ray,* 92 N. C., 810 ; *S. v. Miller,* 93 N. C., 511. The differences in the above cases between *"allegata and probata"* were not as marked or as substantial as is the difference in this case between "money" and "a promissory note." They are two distinct things, each having its well known meaning and name in the parlance of the people as well as in the law. An action for "money" would not permit of a recovery for a note, without amendment. You cannot amend an indictment—at least, against the will of the defendant. You must abide by its terms, and prove the charge as it is laid in the bill. A variance cannot be taken advantage of by motion in arrest of judgment. *S. v. Foushee,* 117 N. C., 766 ; *S. v. Ashford,* 120 N. C., 588 ; *S. v. Jarvis,* 129 N. C., 698. It is waived if there is no objection to it before the verdict is rendered, as those cases show. But a motion to nonsuit is a proper method of raising the question as to a variance. It is based on the assertion, not that there is no *proof* of a crime having been committed, but that there is none which tends to prove that the particular offense charged in the bill has been committed. In other words, the proof does not fit the allegation, and, therefore, leaves the latter without any evidence to sustain it. It challenges the right of the State to a verdict upon its own showing, and asks that the court, without submitting the case to the jury, decide as matter of law that the State has failed in its proof.

The judge should have sustained the motion and dismissed the indictment; but this will not prevent a conviction upon another indictment for obtaining the note by a false pretense, and this follows from what we have said. A party is indictable under Revisal, sec. 3433, for obtaining a signature to any pritten instrument, the false making of which would be punishable as forgery. The evidence offered at the trial proved an indictable offense, but not the one alleged in the bill. We presume the solicitor will send a bill with averments agreeing with the proof he can make, and the court may hold the defendant to answer another indictment.

The judgment is reversed, the verdict set aside, and the bill of indictment dismissed as of nonsuit.

Reversed.