(97 South. 240)

## Ex parte STATE.

## POLLOCK v. STATE.

### (4 Div. 64.)

(Supreme Court of Alabama. June 7, 1923. Rehearing Denied June 28, 1923.)

Certiorari to Court of Appeals.

George D. Pollock was convicted of an offense, and, judgment of his conviction being reversed by the Court of Appeals, the State applies for certiorari to that court to review and revise its judgment and decision in the case of George D. Pollock v. State, 19 Ala. App. 156, 97 South. 237. Writ denied.

Harwell G. Davis, Atty. Gen., Lamar Field, Asst. Atty. Gen., and W. W. Sanders, of Elba, for the State.

Weatherly, Birch & Hickman, of Birmingham, opposed.

PER CURIAM. The writ is denied.

ANDERSON, C. J., and McCLELLAN, SAYRE, and MILLER, JJ., concur.

SOMERVILLE, GARDNER, and THOMAS, JJ., dissent.

THOMAS, J. (dissenting). The indictment was in five counts, charging, respectively, false pretense and the violation of sections 6920 and 6921 of the Code; that is to say, counts 1 and 3 charged one offense, and counts 2, 4, and 5 charged another offense, in varying form. The fourth count was eliminated by a nol. pros. There was acquittal of the charge as expressed in counts 2 and 5, and a verdict of "guilty" on counts 1 and 3. The pretense laid in the indictment, alleged to be false and intended to injure or defraud, is that the said Peanut Products Corporation had paid big dividends and was earning 50 to 60 per cent. on its output. The majority opinion of the Court of Appeals finds:

"A careful examination of the record fails to disclose any evidence of the material fact charged in first and third counts of the indictment—that the defendant obtained from J. B. Martin $500 or any other amount of money. There is some evidence in the record that he did obtain the signature of J. B. Martin to a written instrument or promissory note, as was charged in the indictment, but as to these counts the verdict of acquittal by the jury finally disposes of the offense charged of obtaining the signature of Martin to a written instrument or note.

"So the result is that this record discloses that the defendant was convicted of the offense charged in the first and third counts in the indictment, without any evidence whatever to support the material allegation that he obtained from J. B. Martin the sum of $500 by means of false pretense. If it should be conceded that the defendant did by false pretense obtain the signature of Martin to a written instrument or note, and the note was subsequently paid by Martin, as to which fact there is some evidence that the note was subsequently paid by Martin to the corporation, such proof would not support a conviction for obtaining money by false pretense."

We must take the facts as so found by the majority. This evidence is adverted to in the minority opinion as follows:

"It is further contended that the defendant was entitled to the general charge, because the indictment alleged that 'by means of such false pretenses obtained from the said J. B. Martin $500,' when the proof showed that at the time of the transaction the defendant obtained a note from Martin, due at a future date and payable to the corporation, for whom he was acting as agent. While the defendant did testify that he received none of the proceeds of the note, there was sufficient evidence from which the jury might conclude that he was the agent of the corporation in obtaining the note which was subsequently paid to the corporation in completion of the transaction. The gravamen of the offense is in making the false pretense, with the intent to defraud, and the offense is consummated when, with such intent, he obtains from Martin the $500—whether for himself or another is of no moment. Carroll v. State (Ala. App.) 94 South. 194;[1] 25 Corpus Juris, p. 609. But if it were necessary to prove that defendant received a benefit from the transaction, there is evidence from which the jury might draw this conclusion. The material inquiry is, Was the representation made? The state's testimony tends to prove that it was. Was the representation false? If it was made, it was admittedly false. Was it made with the fraudulent intent? The question was for the jury under the facts. Did Martin, relying upon the false statement, either wholly or as a moving inducement, part with his money either to the defendant or to some one to whom it was by the transaction stipulated to be paid? The testimony on this last question tends to prove that at the time of the false representation and sale of the stock Martin signed a promissory note for $500, the agreed purchase price of the stock, payable to the corporation, and to which was attached the stock certificate; that this

[1] 18 Ala. App. 649.

note was deposited in the bank to the credit of the corporation, and before learning of the falsity of the representation was paid by Martin. It is not necessary to a conviction under this charge that the money should have been paid at the time of the representation; it is sufficient if the promise to pay arose at that time and in consummation of the transaction the money was subsequently paid. Clark v. State, 14 Ala. App. 633, 72 South. 291; Wilkerson v. State, 140 Ala. 155, 36 South. 1004; Foster v. State, 16 Ala. App. 459, 78 South. 722; Id. 16 Ala. App. 458, 78 South. 721."

The foregoing is adverted to merely as illustrating the application of the law to the facts found and declared in the majority opinion of the Court of Appeals. The language of the indictment is that the defendant sold "a certificate or certificates of the capital stock of the [said] Peanut Products Corporation to one J. B. Martin," etc. This was a sufficient charge that defendant sold stock in the corporation issuing the certificate, and such averment of fact of the sale and of the subject-matter thereof met the requirements of the statute as to the statement or charge of the offense in the indictment; that is, the indictment, in counts 1 and 3, so stated the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what was intended, and with that degree of certainty which enabled the court, on conviction of the defendant, to pronounce the proper judgment of the law. Code 1907, § 7134; Baldwin v. State, 204 Ala. 91, 85 South. 304; Gullatt v. State, 18 Ala. App. 21, 88 South. 371.

The majority opinion of the Court of Appeals rests reversal on the failure of the trial court to give the affirmative charge, on written request of the defendant, as to counts 1 and 3 of the indictment. It is stated:

"There seems to be no express decision of this court [Court of Appeals] or the Supreme Court on the question presented by this record, though * * * we find express decision * * * of the Supreme Court of North Carolina * * *"

—citing State v. Gibson, 169 N. C. 318, 320, 85 S. E. 7, and 170 N. C. 697, 86 S. E. 774, holding that a charge of obtaining money by false pretense "cannot be sustained by proving the fraudulent obtaining of a signature to a promissory note" on which money was obtained from another. The justice said, in the North Carolina case:

"He is charged in the bill with obtaining money, to wit, $350, by a false pretense, while the proof tends to show only that, while he made the false representation knowingly and corruptly, he did not obtain money by reason thereof, but was induced to part with the note, which he signed for the defendant, and which he afterwards 'took up' with another note signed also by himself, *and that he has never paid*

*any money on the note,* and certainly none to the defendant. All the defendant got was a note signed by the prosecutor; how it was done and to whom payable does not appear. *The defendant never got any money from the prosecutor.*" (Italics supplied.)

That is to say, by reason of the false pretense, the defendant never got any money from the prosecutor, William S. Martin, as averred in the indictment in State v. Gibson, supra, since the prosecutor never paid the note. Such was the effect of Hendrix v. State, 17 Ala. App. 116, 82 South. 564, where it was averred that defendant obtained the money of Ross Blackmon, when the evidence showed that the money received on the note was that of the First National Bank of Anniston. Thus the present case is differentiated from the Hendrix and Gibson Cases, supra.

In counts 2 and 5 of the instant indictment, of which defendant was acquitted, the promissory note for $500 was declared to be payable to the Peanut Products Corporation on, to wit, the 1st day of April, 1920. In counts 1 and 3, on which the verdict of guilt is based, the date of the false pretense is not averred. The jury, by its verdict of "guilty" (under counts 1 and 3), in legal effect found that defendant made the false pretense averred to J. B. Martin; but in order that a conviction be rested on counts 2 and 5 it was necessary that the jury find, not only that said false pretense was made, but that the due date of the note, given by J. B. Martin by reason of said false pretense, was of April 1, 1920. A conviction on counts 2 and 5 could not, therefore, have been had if the due date of the note in question was shown to be of another date. The Attorney General correctly observes, in brief, that "a concurrence of those facts was essential, and the absence of proof of either fact under the charge of the trial court required a verdict of acquittal," as to counts 2 and 5. Hence the verdict of the jury of acquittal as to said counts may mean no more than that the probata of the due date of the note did not correspond to the allegata thereof.

As to whether a former acquittal is a bar to a subsequent prosecution, the decisive test is "that the same testimony will support both charges," and the two offenses are identical in law and in fact. King v. Vandercomb, 2 Leach's Crown Cases, 816; State v. Johnson, 12 Ala. 840, 46 Am. Dec. 283; Dominick v. State, 40 Ala. 680, 91 Am. Dec. 496; Gordon v. State, 71 Ala. 315; Drake v. State, 60 Ala. 42; Hurst v. State, 86 Ala. 604, 6 South. 120, 11 Am. St. Rep. 79; Hall v. State, 134 Ala. 90, 32 South. 750; Walkley v. State, 133 Ala. 183, 31 South. 854. To a subsequent indictment against defendant, laid under section 6921 of the Code, charging him with obtaining the signature of Martin by false pretenses (with intent to injure or defraud) to a promissory note payable to the Peanut Products

Corporation, *not due* on April 1, 1920, as averred, defendant could not plead his acquittal on a similar charge involving *a note due on* April 1, 1920, as averred in counts 2 and 5.

The due date of the note averred in counts 2 and 5 of the indictment, as we have indicated, was that of April 1, 1920. No specific date is fixed in counts 1 and 3. The majority opinion of the Court of Appeals, on rendition of reversal of judgment, fails to find the facts as to what the evidence disclosed of the due date of the note in question. The statement of act by the majority, in the additional opinion on rehearing, was:

"It is seriously insisted * * * that the evidence authorized the jury to find the defendant guilty of obtaining money under false pretense, in that he obtained a signature to a promissory note by false pretense and that the note was paid. * * * If he did not obtain the signature to the note by false pretense, as the jury found, then he could not have obtained the money by false pretense, *there being no evidence that he obtained anything as charged, except the signature to the promissory note,* * * * and the jury found by their verdict that he did not so obtain the *signature to the note as charged.*" (Italics supplied.)

Thus was the Presiding Judge referring to the note as specifically averred in the counts indicated as of the due date of April 1, 1920. In original opinion it is stated that the mere fact that the false pretense alleged was practically the same in each and all of the counts in the indictment does not amount to a finding of fact that the offense in each count was the same. In the absence of such evidence, if necessary to support the ruling of the trial court in refusing the general affirmative charge as to counts 1 and 3, we may presume that the due date of the note was other than April 1, 1920.

However this may be, the offense charged in counts 1 and 3, and that in counts 2, 4, and 5, were different. The due date of the note is immaterial. It cannot be successfully controverted that a person who, by false pretense, with intent to injure or defraud, *obtains the signature* of another to a promissory note for the payment of money at a later date, the false making of which is forgery, violates section 6921 of the Code, though the note is never paid. Addington v. State, 16 Ala. App. 10, 74 South. 846. And when the maker of such a note subsequently pays the money evidenced by the note, and induced thereto by the false pretense made him with intent to injure or defraud, the offense of obtaining money under false pretense is complete (the other elements of the offense being shown), and conviction may be had under section 6920 of the Code. This follows from a line of decisions to the effect that, when offenses are covered by two statutes *and are distinct,* the offender may be prosecuted and convicted under either or both. Carroll

v. State, 18 Ala. App. 649, 94 South. 194; Gordon v. State, 71 Ala. 315; Sandy v. State, 60 Ala. 58; Foster v. State, 39 Ala. 229; Harrison v. State, 36 Ala. 248; Clark v. State, 14 Ala. App. 633, 72 South. 291. See, also, 19 A. L. R. 626 et seq.; 7 Am. & Eng. Ency. of Law (1st Ed.) par. 2, p. 705; 16 C. J. par. 472, p. 279. The correct observation is made in Sandy v. State, supra, that the money paid out by the prosecutor on the false pretense was paid to a third party, and not to the accused, and that defendant insisted that, inasmuch as he had not obtained the money in the sense that it came into his hands, or under his manual control, he could not be convicted for obtaining money from the prosecutor under false pretense. This insistence was further made in that case by a written charge to the effect that, if defendant never in fact received the money alleged to have been obtained by him under false pretenses, he should be acquitted, which charge was refused. The court said of this ruling:

"If the prisoner procured the money to be paid to another, in extinguishment of his own debt, it is the same, in fact and law, as if the money had been first paid to him, and by him to the creditor. The gist of the offense—the practical wrong—lies in inducing another to part with something valuable, by knowingly representing as true that which is false; such representation being made for the prisoner's advantage, and with intent either to injure or defraud the person to whom the representation is made." Sandy v. State, 60 Ala. 58.

See Wilkerson v. State, 140 Ala. 155, 36 South. 1004; Clark v. State, 14 Ala. App. 633, 72 South. 291; 7 Am. & Eng. Ency. of Law (1st Ed.) par. 2, p. 705. In the instant case the money was paid in accordance with the procurement or wishes of defendant, and in order to effectuate his purpose in selling Martin the stock in question in the Peanut Products Corporation. 25 C. J. 640, 641; 4 Ann. Cas. 365.

To sustain a conviction under section 6920 of the Code, it is not necessary to show the money was actually received into the hands of the defendant, but it is sufficient if it is shown to have been delivered in accordance with his wishes, or for his credit, or for the purpose of effecting some object of the defendant acting with others. This is consistent with the rule of false pretenses. To constitute the crime of obtaining money under false pretenses, it must be proved (1) that a false statement of past or existing facts or conditions, by one person to another, was made; (2) that such statement must be reasonably calculated to deceive the other, and designed to actually induce such other person to part with his money, property, etc.; and (3) such design to injure or defraud must be accomplished by such other party relying (to his injury) upon said false statement of a past or existing fact or condition. Under such indictment it is unnecessary that the

guilty party shall actually receive the money or property or derive the advantage or benefit therefrom; the element of parting with the property, money, etc., is sufficient, if it be shown to have been effectuated by and in accordance with the wishes of the party procuring the result by the false pretense, with the intent to injure or defraud, or if it is delivered for his advantage, or for the purpose of effecting some secret purpose or object of such defendant. 7 Am. & Eng. Ency. of Law (1st Ed.), par. 2, p. 705.

In the instant case, by reason of the false pretense and representations alleged, with the intent to injure and defraud, J. B. Martin was induced to give his note and thereafter to part with his money in payment and satisfaction of the same, to his injury. The facts that Martin paid his own money in discharge of the note, and that the money obtained was not that of the bank, differentiate this case from State v. Gibson, 109 N. C. 316, 85 S. E. 7, and 170 N. C. 697, 86 S. E. 774, and Hendrix v. State, 17 Ala. App. 116, 82 South. 564.

The judgment of the Court of Appeals is laid in error, and the writ of certiorari should be granted.

SOMERVILLE and GARDNER, JJ., concur in the dissent.