STATE OF NORTH CAROLINA v. EZEKIEL HALL

No. 101

(Filed 27 January 1982)

**1. Kidnapping § 1— indictment—absence of allegation of lack of consent**
    An indictment which failed to specify that the kidnapping with which defendant was charged was without the victim's consent was not fatally defective.

**2. Kidnapping § 1.2— variance between indictment and proof**

There was not a fatal variance between indictment and proof where the defendant was charged in the indictment with asportation of the victim to facilitate the commission of the felony of armed robbery and where the evidence tended to show the kidnapping was also for the purpose of facilitating flight. So long as the evidence proved the purpose charged in the indictment, the fact that it also showed the kidnapping was effectuated for another purpose enumerated in G.S. 14-39(a) was immaterial and could be disregarded.

**3. Assault and Battery § 14.3— assault with a deadly weapon with intent to kill inflicting serious injury—sufficiency of evidence**

The evidence was sufficient to support defendant's conviction of assault with a deadly weapon with intent to kill inflicting serious injury on the theory that defendant aided and abetted Johnny Hyman, the trigger man who actually shot the victim. The evidence tended to show that the defendants acted in concert to rob a service station, passing a pistol back and forth as necessary to guard the victim; that there was no discussion over what to do with the victim; one of the defendants told the victim they would drive down the road a short way and drop him off; as they drove they insulted and intimidated the victim; defendant stopped the car after checking to see that there was no traffic; when Hyman shot the victim, defendant waited for Hyman to reenter the car, and they drove away, leaving the victim to die beside the road.

**4. Assault and Battery § 16.1— refusal to submit lesser offense proper**

The trial court correctly refused to instruct the jury on the lesser included offense of assault with a deadly weapon inflicting serious injury where the evidence tended to show that the victim was shot in the back from a distance of a few feet, and the only legitimate inference arising from the evidence was that defendants intended to kill the victim.

**5. Criminal Law § 114.2— jury instructions—no expression of opinion**

The trial court did not impermissibly express an opinion in its instructions as to defendant's guilt of assault with a deadly weapon with intent to kill inflicting serious injury, as the jury properly had before it the question of the purpose of defendant's acts and whether they were undertaken with the requisite criminal intent.

**6. Criminal Law § 126; Robbery § 2— variance between charge, indictment and proof—two distinct offenses of robbery—no denial of right to unanimous verdict**

In a prosecution upon an indictment charging defendant with an armed robbery in which he took cash from the victim's person and cash, cigarettes and wine belonging to the service station where the victim worked, there was no merit in defendant's contention that the trial court's instruction that "the State must prove that the defendant, individually or acting together with another, took property from the person of [the victim] or in his presence" denied defendant his right to an unanimous verdict because a portion of the jurors could have found defendant guilty of robbery related to money in the victim's pocket and another portion could have found him guilty of the robbery related to the property of the service station, since the compelling inference is

that the jury found that defendant took property belonging both to defendant and to the service station, and even if the evidence showed that defendant committed two separate robberies and got a free ride for one of them, such result was favorable to him and affords no ground for complaint. G.S. 15A-1235 and Article I, section 24 of the N.C. Constitution.

Justice BRITT dissenting in part.

Chief Justice BRANCH and Justice EXUM join in this dissent.

DEFENDANT appeals from judgments of *Clark, J.,* 16 March 1981 Criminal Session, CUMBERLAND Superior Court.

Defendant was charged in a three-count bill of indictment with the following offenses on 3 July 1980 in Cumberland County: (1) the armed robbery of Thomas Lee Thompson in violation of G.S. 14-87, (2) the kidnapping of Thomas Lee Thompson in violation of G.S. 14-39, and (3) the felonious assault of Thomas Lee Thompson in violation of G.S. 14-32(a).

On 2 July 1980 at about 7 p.m., Thomas Lee Thompson arrived at Wright's Texaco Station on Gillespie Street in Fayetteville to begin his 12-hour shift. Thompson, forty-nine, had been the night attendant at Wright's for approximately two and a half months. Toward the end of his shift, around 3:30 a.m., a large late model car, perhaps a Buick, pulled up to the full service gas pumps. In it were two black men.

The full service lead-free pumps were not working, so Thompson walked out of the station to ask the driver to pull up to the self-service pumps. As he approached, he noticed the car had New York license tags and a decal on the back bore the slogan, "I'll try anything once, twice if I like it."

The men drove up to the self-service pumps and began pumping gas. Thompson left briefly to put oil in another customer's car. When he returned, eighteen dollars was registered on the pump. Thompson checked the oil but the car needed none. The man Thompson identified as defendant Hall gave Thompson a Texaco credit card and Thompson filled out the ticket, including the license number of the car: 192-JOG. Hall signed the ticket.

Thompson went back into the station. One of the two men opened the trunk of the car briefly, and they both stepped into the restroom. Hall came out in a few minutes and brought a bag

of ice into the station. "How much do I owe you for this, pardner?" he asked. Thompson replied, "About forty cents would be right." Hall handed Thompson some change and Thompson reached for the cash register.

Suddenly the other man appeared, pointing a pistol at Thompson. "This is no toy; this is a holdup." The man stepped around the counter. "Now, you do exactly what we tell you to do and you won't get hurt." Thompson obeyed.

The man with the pistol, Johnny Hyman, led Thompson out to the parked car. Hyman placed Thompson in the back seat and handed the pistol to Hall, who got behind the steering wheel. Hall guarded Thompson with the pistol while Hyman went back into the station. Hyman returned shortly and took Thompson into the station to open the cash register. Hyman emptied the register and led Thompson out to the car, where Hall again guarded him with the pistol. Hyman returned to the station and brought out fifty to sixty cartons of cigarettes and three bottles of Riunite wine. He searched Thompson and took $40 from his right front pocket.

Hall started up the car and told Thompson they would drop him off a few blocks down the street so he couldn't get to a telephone for awhile. Hall asked for directions south and Thompson directed him down a service road out I-95 south. Hall turned and looked back over the seat at Thompson. "You crackers think you're always on top, but I'll show you crackers who's on top now." Hall added an obscene proposal and persisted in making Thompson repeat, "No, sir."

Nearly five miles down the interstate, Hall pulled the car over to the side of the road and told Thompson to get out. While he was opening the door and stepping out, Hyman held Thompson's hand pinned between the front seat and the side of the car. Hyman let go, opened the front door and Thompson realized what was about to happen. Thompson leaped as far away from the car as he could. The gun went off behind him and he was slammed to the ground. Still conscious, he heard the car drive away.

After the car left, Thompson tried to get up. He then realized he could not move his legs. He lay beside the road, screaming at passing cars, and eventually the sun rose. He continued to scream

for help. Toward noon, the July sun became excruciatingly hot and he passed out. He regained consciousness during a rainstorm later that afternoon. Around 7 p.m., fifteen hours after he was shot, a deputy sheriff found him.

Thompson suffered total paralysis of his legs and loss of all effective use of his hands and arms.

Defendants were arrested on 4 July 1980 in Horry County, South Carolina. The license number of their brown Oldsmobile was 192-JOG, State of New York. A bumper sticker on the rear bumper stated: "I'll try anything once, twice if I like it." The trunk of the car was full of cigarettes. A Texaco credit card found on Hall was the one used at Wright's Texaco in the robbery. Hyman's fingerprints were found on cigarette cartons left at the service station. Hall's signed confession to the robbery was admitted at trial.

Defendant offered no evidence.

*Rufus L. Edmisten, Attorney General, by Robert R. Reilly and Sarah C. Young, Assistant Attorneys General, for the State.*

*Adam Stein, Appellate Defender, by Malcolm R. Hunter, Jr., Assistant Appellate Defender, for defendant appellant.*

HUSKINS, Justice.

[1] Defendant first assigns as error the failure of the indictment to specify that the kidnapping was without the victim's consent. We have held this term that such a contention has no merit.

> The term 'kidnap,' by itself, continues to have a precise and definite legal meaning under G.S. 14-39(a), to wit, the unlawful seizure of a person against his will. . . . In short, common sense dictates that one cannot unlawfully kidnap or unlawfully restrain another with his consent. This being so, we hold that the indictment adequately alleged the essential elements of kidnapping.
>
> . . . We hold that the instant indictment reasonably notified defendant of the crime for which he was being charged by plainly describing *who did what and when* and by indicating which statute was violated by such conduct. In such

circumstances, it would not favor justice to allow defendant to escape merited punishment upon a *minor matter of form.*

*State v. Sturdivant,* 304 N.C. 293, 310-11, 283 S.E. 2d 719, 731 (1981) (emphasis in original).

[2] Defendant's second assignment of error is that the evidence fails to support his kidnapping conviction in that the State did not prove the theory charged in the indictment: asportation of the victim to facilitate the commission of the felony of armed robbery. Defendant contends that since the evidence shows the crime of armed robbery was complete at the time the victim was taken from the service station to a point on I-95, the kidnapping was for the purpose of facilitating flight, not for the purpose of facilitating armed robbery. Therefore, according to defendant, there is a fatal variance between indictment and proof. Defendant relies on *State v. Faircloth,* 297 N.C. 100, 253 S.E. 2d 890, *cert. denied,* 444 U.S. 874, 62 L.Ed. 2d 102, 100 S.Ct. 156 (1979), where we held that evidence which showed a kidnapping for the purpose of facilitating a rape would not support a kidnapping conviction upon an indictment charging kidnapping to facilitate flight. Defendant argues in the instant case that the evidence shows he kidnapped the victim to facilitate his escape.

*Faircloth* involved a factual situation similar to the instant case. The gravamen of the *Faircloth* decision was that the evidence failed to prove *the crime charged.* The purposes specified in G.S. 14-39(a) are not mutually exclusive. A single kidnapping may be for the dual purposes of using the victim as a hostage or shield and for facilitating flight, or for the purposes of facilitating the commission of a felony and doing serious bodily harm to the victim. So long as the evidence proves the purpose charged in the indictment, the fact that it also shows the kidnapping was effectuated for another purpose enumerated in G.S. 14-39(a) is immaterial and may be disregarded.

So it is here. Defendant kidnapped Thomas Lee Thompson for the purpose of facilitating the armed robbery and also for the purpose of facilitating flight. Thus the evidence proved the *crime charged* in the indictment. Although defendant contends that the crime was "complete" when Hyman pointed his pistol at Thompson and attempted to take property by this display of force, the fact that all essential elements of a crime have arisen does not

mean the crime is no longer being committed. That the crime was "complete" does not mean it was completed. *See State v. Squire,* 292 N.C. 494, 234 S.E. 2d 563, *cert. denied,* 434 U.S. 998, 54 L.Ed. 2d 493, 98 S.Ct. 638 (1977). There being no variance between indictment and proof, the assignment of error is overruled.

[3] As his third assignment of error, defendant challenges the sufficiency of the evidence to support his conviction of assault with a deadly weapon with intent to kill inflicting serious injury. This charge was submitted on the theory that defendant aided and abetted Johnny Hyman, the trigger man who actually shot Thompson. Defendant contends the evidence fails to show he had any prior knowledge that Hyman intended to shoot Thompson.

One who actually perpetrates a crime by his own hand is guilty as a principal in the first degree. *State v. Benton,* 276 N.C. 641, 174 S.E. 2d 793 (1970). A person who is actually or constructively present at the scene of a crime and aids, abets, or advises in its commission, or who is present for that purpose to the knowledge of the perpetrator, is a principal in the second degree. *State v. Small,* 301 N.C. 407, 272 S.E. 2d 128 (1980); *State v. Brown,* 300 N.C. 41, 265 S.E. 2d 191 (1980). The communication of intent to aid if needed may be inferred from the aider's actions and from his relation to the actual perpetrator. *State v. Hargett,* 255 N.C. 412, 121 S.E. 2d 589 (1961).

From the evidence adduced at trial, the jury very easily could have inferred that defendant had the requisite criminal intent and that such intent was communicated to Hyman, the principal in the first degree. The evidence strongly indicates that these two roving robbers left New York with a loaded .38 caliber pistol and began wending their way south. At some point, they came into possession of a credit card bearing the name of Robert E. Clowes, which they used at least once to purchase gas. The two conferred over whether Wright's Texaco "looked like a good hit." They acted in concert to rob the station, passing the pistol back and forth as necessary to guard Thompson. There was no discussion over what to do with Thompson; one of the defendants merely told him they'd drive down the road a short way and drop him off. As Hall drove, he insulted and intimidated Thompson. Hall stopped the car after checking to see there was no traffic nearby. When Hyman shot Thompson, Hall waited for Hyman to

reenter the car, and they drove away together, leaving Thompson to die beside the road. It is ludicrous to say that the jury could not reasonably infer that Hall knew Hyman intended to shoot the victim. The evidence *overwhelmingly supports* the inference that Hall *did know* Hyman's intentions and acted in concert with him at all times. The felonious assault charge against Hall was properly submitted to the jury. *Compare State v. Birchfield,* 235 N.C. 410, 70 S.E. 2d 5 (1952).

[4] Defendant's fourth assignment of error stems from the trial court's refusal to instruct the jury on the lesser included offense of assault with a deadly weapon inflicting serious injury.

A trial court must submit a defendant's guilt of a lesser included offense of the crime charged in the bill of indictment when and only when there is evidence to sustain a verdict of guilty of the lesser offense. *State v. Jones,* 304 N.C. 323, 283 S.E. 2d 483 (1981); *State v. Redfern,* 291 N.C. 319, 230 S.E. 2d 152 (1976). When the State's evidence is positive as to each and every element of the crime charged and there is no conflicting evidence relating to any element, no instruction on a lesser included offense is required. *State v. Drumgold,* 297 N.C. 267, 254 S.E. 2d 531 (1979).

The State's evidence in this case tends to show Hyman shot Thompson in the back from a distance of a few feet. The only legitimate inference arising from the evidence is that Hyman intended to kill Thompson. Therefore, were the same evidence adduced at the trial of Hyman, no instruction on the lesser included offense of assault with a deadly weapon inflicting serious injury would be necessary or proper.

Although Hall incredibly contends he had no advance notice of Hyman's intentions, this is not determinative of the question of his guilt as an aider or abettor. Hall was present at the scene and assisting Hyman as necessary. From Hall's aid in perpetrating the robbery and continued association and assistance after the shooting, his intent to aid during the shooting, and communication of such intent to Hyman, may be inferred. *State v. Hargett,* 255 N.C. 412, 121 S.E. 2d 589 (1961). This satisfies the requisites of Hall's guilt as an aider or abettor. *State v. Brown,* 300 N.C. 41, 265 S.E. 2d 191 (1980). On the evidence before us here, the court

properly refused to submit, and instruct on, the lesser included offense. This assignment is overruled.

[5] Defendant's fifth assignment of error is that the trial court impermissibly expressed an opinion as to defendant's guilt of assault with a deadly weapon with intent to kill inflicting serious injury. Defendant contends the court's instructions took from the jury the factual determination whether defendant's presence at the location of the assault and his assistance was for the purpose of aiding Hyman in the commission of the assault. This argument is unfounded. The instructions stated "and that in so doing, Ezekiel Hall knowingly encouraged and aided Johnny Hyman," and required a finding of "communicat[ion] to [the principal of] his intention to assist" in the commission of the crime. Thus the jury properly had before it the question of the purpose of Hall's acts and whether they were undertaken with the requisite criminal intent. The jury's decision will not be disturbed.

[6] Finally, defendant contends he was denied his right to a unanimous verdict in violation of G.S. 15A-1235 and Article I, section 24 of the Constitution of North Carolina.

G.S. 15A-1235(a) requires the trial judge, before the jury retires for deliberation, to instruct the jury that in order to return a verdict all twelve jurors must agree to a verdict of guilty or not guilty.

Article I, section 24 of our Constitution provides that no person shall be convicted of any crime "but by the unanimous verdict of a jury in open court."

Defendant was tried upon a three-count bill of indictment charging armed robbery, kidnapping and felonious assault, in that order. The first count charging armed robbery reads in pertinent part as follows:

> THE JURORS FOR THE STATE UPON THEIR OATH PRESENT that on or about the 3rd day of July, 1980, in Cumberland County Ezekiel Hall unlawfully and wilfully did feloniously having in his possession and with the use and threatened use of firearms, . . . to wit: a gun; whereby the life of Thomas Lee Thompson was endangered and threatened, did then and there unlawfully, wilfully, forcibly, violently and feloniously take, steal and carry away approximately Forty Dollars

($40.00) in United States Currency, the personal property of Thomas Lee Thompson; Sixty-two (62) cartons of cigarettes including Kools, Pall Malls and Winstons; One Hundred Eighty-Nine Dollars ($189.00) in United States Currency; three (3) bottles, one-fifth (1/5) size, Riunite red wine, the property of William Aderitte Wright, doing business as Wright's Texaco Company, a sole proprietorship, having a total value of Five Hundred Five Dollars and Twelve cents ($505.12), from the presence, person and possession of Thomas Lee Thompson; in violation of North Carolina General Statutes Section 14-87.

With respect to the crime of armed robbery, the trial judge instructed the jury that if two or more persons act together with a common intent to commit a robbery with a firearm, then each is responsible for the acts of the other done in the commission of the robbery. The trial judge then instructed the jury, among other things, that "the State must prove that the defendant, individually or acting together with another, took property from the person of Thomas Thompson or in his presence." Defendant contends this was an erroneous instruction "because the indictment charges and the State's proof tends to show the commission of two distinct offenses of robbery with a firearm. The trial court's charge instructed the jury that they could return a verdict of guilty if they found that the defendant committed either of the distinct robbery offenses without requiring that all twelve agree as to the guilt on at least one of the offenses. . . . According to the testimony of Thompson, Hyman took $40 in cash from Thompson's pocket, *i.e.*, from Thompson's person, and cash, cigarettes and wine from the station, *i.e.*, property taken from Thompson's presence which belonged to the business where he worked."

Defendant now contends that under the armed robbery count in the bill of indictment and the evidence offered by the State, two armed robberies occurred—one from Thompson's person when the robbers took $40 in cash and the other from Thompson's presence when the robbers took cash, cigarettes and wine from the Texaco station. Defendant says the instruction as given left open the possibility "that six of the jurors found defendant guilty of the robbery related to the money in Thompson's pocket and six of them found defendant guilty of the robbery related to the prop-

erty of the service station." Hence defendant's ingenious argument that submission of the two offenses of armed robbery deprived him of his right to a unanimous verdict and to due process as well. We find the assignment imaginative but wholly unpersuasive.

In his final mandate to the jury, the trial judge instructed that "a verdict is not a verdict until all twelve jurors agree unanimously as to what your decision shall be." This complied with G.S. 15A-1235(a). The jury unanimously convicted defendant of armed robbery and that verdict must stand because the evidence overwhelmingly supports it and nothing indicates any confusion, misunderstanding or disagreement among the jurors with respect to the unanimity of the verdict. The compelling inference is that, rather than reaching a verdict based upon partial agreement that Hall took $40 from Thompson's pocket and partial agreement that he took cash, cigarettes and wine from the Texaco station, the jury unanimously agreed that he did both.

We held in *State v. Potter*, 285 N.C. 238, 204 S.E. 2d 649 (1974), that the gunpoint taking of the employer's property from two store clerks is a single offense of armed robbery. In *Potter* we expressed no opinion as to a factual situation in which, in addition to the theft of the employer's property, the robber takes money or property of an employee. *Ibid.* at 253, 204 S.E. 2d at 659.

The Court of Appeals held in *State v. Johnson*, 23 N.C. App. 52, 208 S.E. 2d 206, *cert. denied*, 286 N.C, 339, 210 S.E. 2d 59 (1974), that the armed robbery of two persons at the same time and place in which the money or property of each victim was taken constitutes two armed robberies and the accused may be separately prosecuted and punished for each.

In *State v. Gibbs*, 29 N.C. App. 647, 225 S.E. 2d 837 (1976), the evidence showed that one defendant forced a store clerk at knife point to a back room in the store where he took her pocketbook and then returned her into the store where he took the store's money while a codefendant held a second clerk on the floor at gunpoint. Held: Defendants were properly convicted of two *separate* counts of armed robbery.

In *State v. Sellars*, 52 N.C. App. 380, 278 S.E. 2d 907 (1981), the bill of indictment charged defendant with armed robbery of

the prosecuting witness and also with taking money from the Village Inn Motel where the witness worked, all in a single count. The Court of Appeals held that defendant was charged with only one offense, the armed robbery of the prosecuting witness, and the fact that in the robbery defendant obtained money both from the prosecuting witness and the motel where she worked did not create separate offenses.

The facts in the case before us are similar to the facts in *Sellars*, but we purposely express no opinion as to the correctness of the *Sellars* decision that only one robbery occurred. The bills of indictment here and in *Sellars* may, or may not, be similar. Here, regardless of whether defendant committed one armed robbery or two, the evidence amply sustains a conviction for either or both. Whether the verdict in this case was (1) a conviction for robbing Thomas Thompson of $40, or (2) a conviction for taking money and other property of Wright's Texaco Station from the presence of Thomas Thompson who was in possession of those goods and acting as the owner's alter ego, or (3) a conviction for both, is entirely immaterial. It is true that the bill of indictment does not contain separate counts charging separate armed robberies as required by G.S. 15A-924(a)(2); and the trial court charged the jury in the singular while narrating the facts showing the robbery of Thompson of $40 of his own funds and also the taking of money and other property belonging to Wright's Texaco Station. Even so, if it be conceded that defendant committed two armed robberies as argued in his brief and got a free ride for one of them, it was a result favorable to him and affords no ground for complaint.

For the reasons stated the verdicts and judgments upon the three counts in the bill of indictment must be upheld.

No error.

Justice BRITT dissenting in part.

I respectfully dissent from that part of the majority opinion concluding that there was no error in defendant's conviction of the offense of kidnapping. In my opinion, there was a fatal variance between the pleading and the proof on the kidnapping count.

The second count in the bill of indictment reads as follows:

AND THE JURORS FOR THE STATE UPON THEIR OATH PRE-SENT that on or about the 3rd day of July, 1980, in Cumberland County Ezekiel Hall unlawfully and wilfully did feloniously kidnap Thomas Lee Thompson, a person, who had attained the age of sixteen (16) years, by unlawfully removing him from one place in Cumberland County to another for the purpose of *facilitating the commission of a felony, to wit: Armed Robbery.* The person kidnapped was seriously injured during the kidnapping; in violation of North Carolina General Statutes Section 14-39; . . . . (Emphasis added.)

G.S. 14-39, our kidnapping statute, provides in pertinent part:

"Kidnapping.—(a) Any person who shall unlawfully con-fine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person * * * shall be guilty of kidnapping if such confine-ment, restraint or removal is for the purpose of:

(1) Holding such other person for ransom or as a hostage or using such other person as a shield; or

(2) Facilitating the commission of any felony or facilitating flight of any person following the commis-sion of a felony; or

(3) Doing serious bodily harm to or terrorizing the per-son so confined, restrained or removed or any other person."

The evidence in the case at hand showed that defendant and his accomplice robbed Mr. Thompson at the Wright's Texaco Sta-tion on Gillespie Street in Fayetteville; that thereafter, at gun-point, they forced Mr. Thompson into the automobile they were driving; that they then transported their victim some 5 miles to a point on I-95 near Rockfish Creek; that they then stopped the car and ordered the victim to get out; that after Mr. Thompson got out of the car, the accomplice shot him in his back; and that the two robbers then drove away.

With respect to the kidnapping charge, the trial judge in-structed the jury as follows:

Now, in the second count, the defendant has been charged with the offense of kidnapping. Now I charge that for you to find the defendant guilty of kidnapping, the State must prove to you four things beyond a reasonable doubt.

First, the State must prove that the defendant unlawfully, that is, without legal justification or excuse, removed Thomas Lee Thompson from one place to another.

Secondly, the State must prove that Thomas Lee Thompson did not consent to this removal.

Now, members of the jury, the consent that is referred to here means free and voluntary consent. Consent which is obtained or induced by fear, violence, or threats of violence is not consent in law.

And, third, the State must prove that the defendant *removed Thomas Lee Thompson for the purpose of facilitating his commission of a robbery with a firearm.* (Emphasis ours.)

And, fourth, the State must prove that the removal was a separate complete act independent of and apart from the offense of robbery with a firearm.

\* \* \*

So it is, that on the count wherein the defendant is charged with the offense of kidnapping, that I instruct you that if you find from the evidence in this case beyond a reasonable doubt that on or about July 3, 1980, the defendant, Ezekiel Hall, acting either by himself or together with Johnny Hyman, unlawfully removed, that is, carried Thomas Lee Thompson from Wright's Texaco station on Gillespie Street in the city of Fayetteville, a distance of some four or five miles to a location on Interstate 95 near Rockfish Creek; and that Mr. Thompson did not consent to this removal; *and that this was done for the purpose of facilitating the defendant's commission of a robbery with a firearm of Thomas Lee Thompson*; and that this removal was a separate complete act independent of and apart from the robbery with a firearm, I say, if you so find as to these things, it would then be your duty to return a verdict of guilty of kidnapping. (Emphasis ours.)

However, if you do not so find or if you have a reasonable doubt as to any one or more of these things, it would then be your duty to return a verdict of not guilty as to the charge of kidnapping.

I am unable to reconcile the holding of the majority in this case with our decision in *State v. Faircloth*, 297 N.C. 100, 253 S.E. 2d 890, *cert. denied*, 44 U.S. 874, 62 L.Ed. 2d 102, 100 S.Ct. 156 (1979). In that case the indictment charged that the defendant kidnapped the victim by "removing her from one place to another *for the purpose of facilitating flight* following the commission of the felony of rape." The evidence showed that the defendant, with a knife in his hand, entered the victim's car, made her move from the driver's seat to the passenger's seat, drove the car several miles to a remote area, and forced the victim to have sexual intercourse with him.

In a unanimous decision we held in *Faircloth* that there was a fatal variance between the indictment and the proof and that the trial court erred in denying the defendant's motion to dismiss the kidnapping charge. We noted that if the defendant had been tried on an indictment alleging that he restrained or removed the victim from one place to another for the purpose of facilitating the commission of the felony of rape, the conviction could be upheld. "But, the evidence does not support the charge as laid in the indictment."

In *State v. Law*, 227 N.C. 103, 40 S.E. 2d 699 (1946), in an opinion by Chief Justice Stacy, we find:

The question of variance may be raised by demurrer to the evidence or by motion to nonsuit. "It is based on the assertion, not that there is no *proof* of a crime having been committed, but that there is none which tends to prove that the particular offense charged in the bill has been committed. *In other words, the proof does not fit the allegation, and, therefore, leaves the latter without any evidence to sustain it.* It challenges the right of the State to a verdict upon its own showing, and asks that the court, without submitting the case to the jury, decide, as matter of law, that the State has failed in its proof" — Walker, J., in *S. v. Gibson*, 169 N.C., 318, 85 S.E., 7. To like effect are the decisions in *S. v. Weinstein*, 224 N.C., 645, 31 S.E. (2d), 920; *S. v. Jackson*, 218 N.C., 373, 11

S.E. (2d), 149; *S. v. Harris*, 195 N.C., 306, 141 S.E., 883; *S. v. Harbert*, 185 N.C., 760, 118 S.E., 6; *S. v. Nunley*, 224 N.C., 96, 29 S.E. (2d), 17; *S. v. Davis*, 150 N.C., 851, 64 S.E., 498; *S. v. Hill*, 79 N.C., 656. 227 N.C. at 104, 105. (Emphasis ours.)

If defendant in the case at hand had been tried on an indictment alleging that he restrained or removed Mr. Thompson from one place to another for the purpose of facilitating flight following the commission of the felony of armed robbery, I would vote to uphold the conviction. Unfortunately, the evidence does not support the charge as laid in the indictment.

Chief Justice BRANCH and Justice EXUM join in this dissent.