STATE OF NORTH CAROLINA v. KELVIN WENDELL SELLARS

No. 8015SC991

(Filed 16 June 1981)

1. **Criminal Law § 21.1— failure to hold probable cause hearing—defendant not prejudiced**

   Defendant failed to show that he was prejudiced by the continuance of his probable cause hearing; and his subsequent indictment on the same day that the probable cause hearing was continued rendered unnecessary a probable cause hearing, as G.S. 15A-606(a) requires a probable cause hearing only in situations in which no indictment has been returned by a grand jury.

2. **Robbery § 2— indictment—one offense properly charged**

   There was no merit to defendant's contention that the indictment charging him with armed robbery charged him with two offenses in violation of G.S. 15A-924, since the indictment charged defendant with one offense, armed robbery of the prosecuting witness, and the fact that in the robbery defendant obtained money both from the prosecuting witness and the motel where she worked did not create separate offenses.

3. **Criminal Law § 22— arraignment—calendaring unnecessary—trial during same week as arraignment**

   No calendaring of defendant's arraignment was necessary, since he was tried in Chatham County, a county which did not hold at least 20 weeks of trial sessions involving criminal cases in 1979, and G.S. 15A-943(a) was therefore inapplicable; furthermore, defendant's trial the week of his arraignment violated no statutory mandate applicable to him.

4. **Constitutional Law § 31— indigent defendant—no right to State appointed investigator**

   Defendant, an indigent, did not show that the expenses of a private investigator and of an alleged expert in the area of reliability of eyewitness identification were necessary expenses of representation that the State was required to provide, since defendant did not show that there was a reasonable likelihood that a private investigator would discover evidence which would materially assist him in the preparation of his defense, and defendant made no showing that the alleged expert's testimony would assist him, as the stated purpose of the expert's testimony was to lay a basis for defendant's argument that it was possible that the prosecuting witness made a mistake in her identification of defendant. G.S. 7A-450(b).

5. **Criminal Law § 91— 195 days between indictment and trial—no denial of speedy trial**

   Though 195 days elapsed from defendant's indictment to his trial, defendant was nevertheless tried within the 120-day period of the Speedy Trial Act, since 148 days were properly excluded due to the pendency of defendant's motion for change of venue and, excluding those 148 days, defendant's trial was held within the statutory period. G.S. 15A-701(b)(1)(d).

State v. Sellars

6. **Criminal Law § 91— 331 days between mistrial and second trial—no denial of speedy trial**

Though 331 days elapsed between defendant's mistrial and his second trial, defendant's second trial nevertheless began within the 120-day period required by the Speedy Trial Act where the trial court properly excluded delays occasioned by the unavailability of essential witnesses and time which elapsed because the venue of the case was within a county where, due to a limited number of court sessions, the time requirements of G.S. 15A-701 could not be met. G.S. 15A-701(b)(3), (8).

7. **Criminal Law § 66.18— in-court identification—admissibility determined at prior trial**

In a second trial of defendant after his first trial ended in a mistrial, the trial court did not err in refusing to hold voir dire examinations during the second trial in order to determine the admissibility of witnesses' identification testimony, since defendant was unable to demonstrate to the trial court that any new evidence would be forthcoming in a second set of voir dire examinations.

8. **Criminal Law § 66.16— identification of defendant—no taint from photographic identification**

The trial court did not err in admitting into evidence the in-court identification of defendant by two witnesses, and there was no merit to defendant's argument that a pretrial photographic identification procedure was so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification, where the witnesses testified that they first observed defendant in a motel lobby which was well lighted; both were able to describe defendant; both selected defendant's photograph from a set of ten ordinary photographs all depicting black males; police officers made no suggestion to the witnesses as to which picture to choose; and the witnesses never wavered in their identification.

9. **Criminal Law § 162.6— objection to evidence—specific grounds given**

Where defendant gave specific grounds for his objection to the admission of evidence based on its relevancy and materiality, he could not argue on appeal that the evidence was objectionable on statutory grounds that the evidence was not disclosed to him pursuant to an order compelling discovery.

10. **Criminal Law § 113.9— instructions—failure to request correction**

Defendant could not complain on appeal that the trial court erred in its jury instructions where defendant failed to bring the matter before the trial court to seek a correction.

11. **Criminal Law § 112.7— alibi—jury instruction**

Defendant was not prejudiced by the trial court's erroneous instructions with regard to defendant's alibi evidence where, prior to jury deliberations, the trial judge corrected his misstatement and the correction nullified any prejudice to defendant.

**12. Criminal Law § 113.1 — jury instructions — summary of evidence — jury's recollection controlling**

There was no merit to defendant's contention that the trial court erred when it refused defendant's request that it instruct the jury that their recollection of the evidence was controlling and that, if it conflicted with summaries of evidence by the court or by the attorneys, the jurors were to rely on their recollection, since the trial judge clearly outlined to the jury its responsibility for finding the facts.

**13. Rape § 6 — jury instructions — recapitulation of evidence**

There was no merit to defendant's contention that there was no testimony by the prosecuting witness that the reason she submitted to sexual relations was that she feared defendant's use of a pistol and that the trial court erred in so instructing, though there was no direct statement by the prosecuting witness that she submitted to defendant's sexual attack because she was afraid of the gun, since there was ample circumstantial evidence that defendant had used the gun first to rob her and then to get her into his car, and the evidence was clear that defendant had the gun in the car and that the prosecuting witness was scared because of the gun.

**14. Criminal Law § 113.2 — jury instructions — summary of evidence sufficient**

There was no merit to defendant's argument that, since identification of defendant as the perpetrator of the crimes was a substantial issue, the judge, in summarizing the evidence, should not have placed defendant at the scene of the crime without raising defendant's contention that defendant was improperly and erroneously identified by the prosecuting witness, since the trial court gave an adequate summary of defendant's alibi evidence and of the State's burden to prove beyond a reasonable doubt that defendant was the one committing the alleged crimes.

**15. Kidnapping § 1.3 — purpose of kidnapping — jury instructions**

Where a kidnapping indictment charged that defendant kidnapped the prosecuting witness "for the purpose of using her as a shield and for the purpose of facilitating the flight of defendant," the trial court did not err in determining that there was insufficient evidence to go to the jury on the question of defendant's use of the prosecuting witness as a shield and in dropping this allegation from his charge.

**16. Kidnapping § 1.2 — sufficiency of evidence**

There was no merit to defendant's contention that the State failed to prove all of the elements of the offense of kidnapping as charged because there was no evidence that defendant used the prosecuting witness as a shield or for the purpose of facilitating his flight, since the State's evidence tended to show that defendant forced the prosecuting witness to go with him and his companion after they had robbed her; while there was no evidence that defendant actually used the prosecuting witness as a shield, it was entirely reasonable for the jury to believe that he would have had the need arisen; defendant and his companion would not have left the prosecuting witness at the motel where she was robbed to call police, and in that sense, defendant's taking her was for the purpose of facilitating his flight.

State v. Sellars

**17. Rape § 5— first degree rape—sufficiency of evidence**

There was no merit to defendant's contention that there was no evidence as to his use of deadly force and therefore no evidence to convict him of first degree rape, since, although there was no evidence that defendant raped the prosecuting witness while wielding a gun, the record was replete with sufficient references to the gun—at the motel where the victim was robbed, in an automobile in which she was abducted, and outside the automobile when defendant shot her four times—so that the charge of first degree rape was properly submitted to the jury.

**18. Constitutional Law § 81— consecutive sentences—no cruel and unusual punishment**

Where the punishment imposed in each of defendant's cases was within statutory limits, it could not be considered cruel or unusual, nor was the imposition of consecutive terms cruel or unusual punishment.

APPEAL by defendant from *Brewer, Judge.* Judgment entered 20 June 1980, in Superior Court, CHATHAM County. Heard in the Court of Appeals 2 March 1981.

On 10 December 1978, defendant was arrested by proper execution of four warrants charging him with aggravated kidnapping, armed robbery, assault with a deadly weapon with intent to kill inflicting serious injury, and first degree rape. On 22 January 1979, defendant was arraigned in Alamance County on each of the four charges, and to each he pleaded not guilty. By a 14 June 1979 order of Judge McKinnon, the venue of defendant's trial was changed to Chatham County where, after arraignment on the four charges on 16 July 1979, defendant was tried. On 21 July 1979, Judge Rouse entered a judgment finding the jury hopelessly deadlocked and declaring a mistrial.

On 16 June 1980, defendant was again brought to trial on the four indictments. At that trial, the State's evidence tended to show that, between 8:30 and 9:00 o'clock on the night of 3 December 1978, two black men, one of whom was the defendant, entered the Village Inn Motel in Alamance County, where a young woman, referred to hereinafter as the prosecuting witness, was working as the desk clerk. In the office with the prosecuting witness was Don King, another employee of the motel. The two men complained of car trouble, stayed in the telephone area of the motel for two or three minutes, then left. After Don King left, at approximately 9:25, the two black men returned to the motel where the defendant, wielding a small chrome-plated handgun,

demanded the money from the cash register. The other man, meanwhile, had taken the prosecuting witness's pocketbook. The two men then left the office, taking her with them. They forced her into an old light blue car parked in the motel parking lot. Defendant drove the vehicle for 20 to 25 minutes—first on Interstate 85 towards Haw River and finally onto a dirt road. During this time, the prosecuting witness, who started the ride in the back seat, was told to climb to the front seat where she was forced to remove her clothing. After both men had fondled her, she was made to return to the back seat.

After defendant pulled onto the dirt road, he stopped the car and forced the prosecuting witness to have sexual intercourse. Thereafter, she was told to get all her clothes and to get out of the car. While defendant was threatening the prosecuting witness about what the two men would do if she reported them, he pulled the gun and shot her twice, once in the abdomen and once in the shoulder. The two men then ran to the car; the prosecuting witness, thinking they had left, got up and began walking toward the hard-surfaced road. The two men, however, had not left; they turned on the headlights of the car, and the defendant jumped out and ran to her. While she pleaded, "I'm dying, please, don't hurt me. Don't shoot me anymore," the defendant shot her twice more, once in the face and once in the back. He and the other man then drove off. After waiting a short time to be sure they had left, the prosecuting witness got to her feet and walked back to the hard-surfaced road where she found help.

Defendant's evidence tended to show that, on 3 December 1978, he was at his home after being released on bond from Rockingham County jail. On that date, he borrowed his sister's blue Plymouth and met John Wiley at Ron's Quickee Mart. Since he had decided to ride around with Wiley in his car that night, defendant decided to lend his sister's car to his cousin and look-alike, Mario Steadman, and his companion Michael Green. Wiley, his girl friend, and defendant left the Quickee Mart sometime around 7:00 p.m. and headed north on Highway 86. After riding around for several hours, defendant returned to the Quickee Mart where he was supposed to meet Steadman and pick up his sister's car. Steadman did not come, and defendant asked Wiley to take him home. By 10:00 p.m., defendant was home, and he remained there the rest of the night.

The jury returned verdicts of guilty of kidnapping, armed robbery, assault with a deadly weapon with intent to kill inflicting serious bodily injury, and second degree rape. After hearing the state's evidence concerning defendant's two previous convictions for armed robbery, Judge Brewer sentenced defendant to prison terms running consecutively, both to the sentence imposed in an earlier armed robbery conviction and to one another. From this judgment, defendant appealed.

*Attorney General Edmisten, by Assistant Attorney General Donald W. Stephens, for the state.*

*Paul H. Ridge and James K. Roberson for defendant appellant.*

MORRIS, Chief Judge.

The record of this complex case reveals a number of pretrial motions and orders which involved at least seven judges in both Alamance and Chatham counties. Defendant took exception to, and appealed from, the actions of six of these judges. On this appeal, defendant argues twenty-five assignments of error, all of which we have considered.

## Pretrial Issues

Defendant raises four questions concerning alleged errors occurring prior to his second trial. The first question involves the failure of the trial court to conduct a probable cause hearing. The record shows that, on 2 January 1979, at defendant's probable cause hearing, the state moved for a continuance which was granted by Alamance County District Court Judge Harris, who set a 4 January 1979 date for the hearing. Judge Harris's order stated as the reason for the continuance the fact that the state was not prepared for the hearing. Later during the day of 2 January 1979, the grand jury of Alamance County returned four indictments against defendant, and, as a result, defendant's probable cause hearing was never held.

[1] Defendant assigns as error the denial of his 17 January 1979 motion to dismiss for failure of the trial court to hold a probable cause hearing prior to his indictment. Similarly, he assigns as error the denial of his post-indictment demand for a probable cause hearing. In support of his assignments of error, defendant refers to G.S. 15A-606(a) and (f):

(a) The judge must schedule a probable-cause hearing unless the defendant waives in writing his right to such hearing. . . .

. . .

(f) Upon a showing of good cause, a scheduled probable-cause hearing may be continued by the district court upon timely motion of the defendant or the State. Except for extraordinary cause, a motion is not timely unless made at least 48 hours prior to the time set for the probable cause hearing.

Defendant argues that he did not waive his right to a probable cause hearing, that the state did not show good cause for the 2 January 1979 continuance of the probable cause hearing, and that the state did not file a timely and proper motion to continue.

The purpose of a probable cause hearing is to determine whether the accused should be discharged or whether sufficient probable cause exists to bind the case over to superior court and to seek an indictment against the defendant. *State v. Lester*, 294 N.C. 220, 240 S.E. 2d 391 (1978); *State v. Cradle*, 281 N.C. 198, 188 S.E. 2d 296, cert. denied, 409 U.S. 1047, 93 S.Ct. 537, 34 L.Ed. 2d 499 (1972). Section (f) of G.S. 15A-606 is designed to prevent unnecessary delay in the procedure leading to charges or dismissal of charges against a defendant. In light of the purpose of a preliminary hearing and of G.S. 15A-606(f), we can find no prejudicial harm resulting from the decision by Judge Harris to continue the probable cause hearing. We are not here deciding whether the trial court acted properly under the guidelines of G.S. 15A-606(f). That decision is unnecessary since defendant has failed to show that his case was prejudiced in any way by the continuance of the probable cause hearing. Furthermore, as noted in *State v. Siler*, 292 N.C. 543, 234 S.E. 2d 733 (1977), there is a substantial question as to whether the provisions of G.S. 15A-606(f) were designed to provide a defendant with additional rights, rather than to set rules for the orderly and efficient administration of justice. *Id.* at 555, 234 S.E. 2d at 741.

Defendant's post-indictment efforts to have a probable cause hearing were properly unavailing. In *State v. Lester*, supra, the North Carolina Supreme Court held that G.S. 15A-606(a) requires a probable cause hearing only in situations in which no indictment has been returned by a grand jury. In the present case, therefore,

defendant was not entitled to a probable cause hearing after his 2 January 1979 indictments.

We, therefore, hold that the continuance of defendant's probable cause hearing was not prejudicial to him and that his subsequent indictment rendered unnecessary a probable cause hearing.

[2] The second pretrial issue concerns defendant's 12 February 1979 indictment on the charge of armed robbery. The indictment read in part that defendant

> unlawfully, wilfully, and feloniously having in his possession and with the use and threatened use of firearms . . . whereby the life of [the prosecuting witness] was endangered and threatened, did then and there unlawfully, wilfully, forcibly, violently and feloniously take, steal, and carry away $274.50 while at the Village Motel and $9.00 from the person of [the prosecuting witness], of the value of $283.50 dollars, from the presence, person, place of business, of the Village Motel and [the prosecuting witness].

On 23 February 1979, well over four months before defendant's first trial, defendant made a Motion for Election or Dismissal for Duplicity, alleging that the armed robbery indictment charged defendant with two offenses in violation of G.S. 15A-924. Judge McKinnon, who heard the motion, signed an order dated 12 June 1979, denying defendant's motion and stating in part:

> The Court has considered the bill of indictment and the arguments of counsel and is of the opinion that it charges only one charge of armed robbery whereby the personal property of two persons was taken and is of the opinion that no duplicity exists in the bill of indictment. . . .

Defendant assigns as error this order by the trial court, and he argues that the count charged two offenses; that, in fact, defendant could have been charged in two counts with two offenses; and that the state should have been forced to elect between the two offenses.

We do not agree. Defendant was charged with one offense, the armed robbery of the prosecuting witness. The fact that in that robbery defendant obtained money both from the prosecuting witness and the Village Motel does not create separate offenses. Defendant's argument is, therefore, without merit.

[3]   The third pretrial issue is related to defendant's arraign-
ment. The record shows that defendant was subjected to two sets
of indictments, the first being returned on 2 January 1979, and
the second being returned on 12 February 1979. The chief dif-
ference in the two sets of indictments is that, in the second set,
defendant was charged with first degree rape whereas, in the
first set, he had been charged with second degree rape. At de-
fendant's first trial, beginning 16 July 1979, he was arraigned,
over his objection, on the second set of indictments. Over his fur-
ther objections, his trial began on the same day as his arraign-
ment. Eleven months later at his second trial, defendant objected
to his being tried upon the arraignment of the first trial, and he
argues that the only arraignment properly held for him was the
one with respect to the original bills of indictment. He argues
then, as he does now, that his arraignment at his first trial had
not been calendared pursuant to G.S. 15A-943(a) and that, further-
more, he was tried that same week over his objection and in
violation of G.S. 15A-943(b). He cites *State v. Shook*, 293 N.C. 315,
237 S.E. 2d 843 (1977), to support his argument and his conclusion
that he is entitled to a new trial.

Defendant's argument is without merit. The G.S. 15A-943(a)
requirements for calendaring arraignments apply only to those
North Carolina counties "in which there are regularly scheduled
20 or more weeks of trial sessions of superior court at which
criminal cases are heard, and in other counties the Chief Justice
designates. . . ." We here *take judicial notice of the dates and
terms of superior court* and of the fact that Chatham County is
not one of those which, in 1979, held at least 20 weeks of trial ses-
sions involving criminal cases. *State v. Shook*, supra. Consequent-
ly, G.S. 15A-943 does not apply to the facts of this case.

G.S. 15A-944 does apply to defendant's situation. It reads:

In counties other than those described in G.S. 15A-943 the
prosecutor may, but is not required to, calendar ar-
raignments in the manner described in that section.

In the present case, therefore, no calendaring of defendant's ar-
raignment was necessary. Furthermore, his trial the week of his
arraignment violated no statutory mandate applicable to defend-
ant.

[4]   The final pretrial issue raised by defendant involves his right to expert assistance.

Before defendant's first trial in 1979, defendant filed a Motion for Private Investigator and Expert Assistance in which he alleged that the state's inadequate response to his discovery requests necessitated defendant's own investigation. That motion was denied by Judge John Martin on 5 March 1979. In Judge Martin's order, he directed the state to respond to certain of defendant's discovery requests.

On 9 July 1979, defendant filed another Motion for Expert Assistance in which he sought the court's approval of the state's payment of money necessary to secure Dr. Robert Buckhout, "an expert in the area of reliability of eyewitness identification." Judge Battle denied defendant's motion without prejudice to the right of defendant to renew the motion before the judge assigned to defendant's case. On 16 July 1979, prior to defendant's first trial, defendant's Motion for Expert Assistance was again denied, this time by Judge Rouse. Defendant, prior to his second trial, renewed his motion which was denied by Judge Smith. We here consider the question of whether defendant, an indigent, showed the respective courts that the expenses of a private investigator and of Dr. Buckhout were "necessary expenses of representation" that the state was required to provide. G.S. 7A-450(b).

The law is well settled in North Carolina that the right to state-appointed investigators arises "only upon a showing by defendant that there is a reasonable likelihood that such an investigator would discover evidence which would materially assist defendant in the preparation of his defense." *State v. Alford,* 298 N.C. 465, 469, 259 S.E. 2d 242, 245 (1979). Whether an expert should be appointed to assist an indigent in the preparation of his case is a question which depends upon the facts of each case and which lies within the discretion of the trial judge. *Id.*

Defendant, in his motion for a private investigator, failed to show that there was a reasonable likelihood of such discovery. Indeed, his motion painted a picture of frustration on the part of defendant because of alleged delays in state's compliance with discovery. Judge Martin's order of 5 March 1979, directing the state to comply with most of defendant's discovery requests

should have obviated the alleged reason for appointment of a private investigator.

The various trial courts' refusals to approve state money for securing the aid of Dr. Robert Buckhout were likewise within their discretion. Defendant made no showing that Dr. Buckhout's testimony would assist him. The alleged purpose of Dr. Buckhout's testimony was to lay a basis for defendant's argument that *it was possible* that the prosecuting witness made a mistake in her identification of defendant. We do not believe the state is required to pay for expert witnesses whose testimony amounts to generalities and to speculation as to whether those generalities apply to a specific case.

We note, however, that Dr. Buckhout did testify at defendant's second trial and that his fee was paid by defendant's family. Under all the circumstances of this case, we find no abuse of discretion in the trial courts' denials of defendant's motions for expert assistance.

### Speedy Trial Issues

At three different times, defendant filed motions with the trial courts seeking dismissal of the actions against him on the grounds that he had not received a trial within the time periods prescribed by North Carolina's Speedy Trial Act, G.S. 15A-701, *et seq.* Each motion was denied, and to these denials, defendant assigns error.

G.S. 15A-703 imposes on a defendant charged with a criminal offense the burden of proof in supporting a motion to dismiss based upon alleged failure to comply with the time limits for trial as specified in G.S. 15A-701. The state, however, has "the burden of going forward with evidence in connection with excluding periods from computation of time in determining whether or not (sic) the time limitations . . . have been complied with." G.S. 15A-703; *State v. Edwards*, 49 N.C. App. 426, 271 S.E. 2d 533 (1980). With those principles in mind, we shall review the three arguments advanced by defendant.

[5] Defendant's first argument is that more than 120 days elapsed from his indictment on 2 January 1979, to his first trial which began 16 July 1979. Under the provisions of G.S. 15A-701(a1)(1), we begin with the proposition that defendant's first

State v. Sellars

trial should have been 'held within 120 days of his indictment. Since there are more than 120 days from 2 January to 16 July 1979, it was incumbent upon the state to go forward with evidence demonstrating to the trial court that certain periods of time should have been excluded from the total number of days elapsing between indictment and trial. The record demonstrates that the state did go forward with such evidence. This Court, after reviewing Judge Rouse's order pertaining to defendant's motion to dismiss, concludes that he properly denied defendant's motion.

We admit that, from Judge Rouse's order, it is somewhat difficult to ascertain exactly how he numerically calculated the exclusionary periods applicable to defendant's case. There is no doubt, however, that there was a sufficient number of days which should have been excluded so that the total days elapsing between indictment and trial did not violate the Speedy Trial Act provisions.

In his order, Judge Rouse made the following findings of fact concerning motions which, under G.S. 15A-701(b), were to be considered in calculating eligible exclusionary periods:

2. [O]n February 8, 1979, the defendant filed a motion in which he raised the question of the capacity of the defendant to proceed and moved the court that the defendant be committed to a State mental health center for observation and treatment for the period necessary to determine the defendant's capacity to proceed.

3. Thereafter on February 12, 1979, the defendant was ordered committed to Dorothea Dix Hospital for the purpose of determining his capacity to proceed. The following day, February 13, 1979, the presiding judge amended the Order committing the defendant to Dorothea Dix Hospital and committed the defendant to Central Prison, Raleigh, North Carolina.

.   .   .

5. The report with respect to the defendant's capacity to proceed was dated April 5, 1979, and this report was received by counsel for the defendant on April 12, 1979. . . .

6. On January 17, 1979, a motion for change of venue or for special venire was filed. The hearing on the motion for a special venire or change of venue was first heard before Judge McKinnon on June 11, 1979. He ruled on the motion, denying same on June 12, 1979. On June 14, 1979, the State withdrew its objection to the motion for a change of venue and Judge McKinnon entered an order on that date transferring these cases for trial to Chatham County.

7. By motion filed March 20, 1979, the State moved that the defendant be directed to provide blood and hair samples and for saliva and dental impressions. On March 26, 1979, an objection and motion to vacate this Order was filed. The objection and motion to vacate was denied by Judge Martin on March 26, 1979. On May 1, 1979, a motion to suppress was filed by the defendant. This motion was heard and ruled upon by Judge McKinnon on June 12, 1979.

Judge Rouse properly excluded, under G.S. 15A-701(b)(1)(d), the period of time from defendant's motion for change of venue (17 January 1979) to Judge McKinnon's order granting defendant's motion and transferring the cases to Chatham County for trial.[1]

We do not deem it necessary to rule on the question of additional exclusionary periods since, according to our calculations, defendant was tried within 120 days of his indictment. We note that 195 days elapsed from defendant's indictment to his trial, but, of those 195 days, 148 were properly excluded due to the pendency of defendant's motion for change of venue. Defendant's first trial, therefore, was held within the 120-day period.

We do not accept defendant's contention that Judge Rouse improperly overruled other judges involved in defendant's trial

---

1. G.S. 15A-701(b)(1) reads in pertinent part:

(b) The following periods shall be excluded in computing the time within which the trial of a criminal offense must begin:

(1) Any period of delay resulting from other proceedings concerning the defendant including, but not limited to, delays resulting from

. . .

d. Hearings on pretrial motions or the granting or denial of such motions. . . .

by retroactively excluding periods of time for motions and orders in which the respective judges had made no rulings concerning exclusion. We read the Speedy Trial Act to authorize the trial judge, who hears the motion to dismiss on the grounds that defendant was not given a speedy trial, to calculate exclusionary periods. Certainly the silence of other judges as to exclusionary periods cannot mean that they intended such periods not to be excluded, as defendant argues. It was, therefore, proper for Judge Rouse to calculate exclusionary periods.

Defendant's second speedy trial argument is that, because his arraignment at his first trial was improper, the first trial was a nullity. Therefore, according to defendant, the calculation of time elapsing before his second trial (16 June 1980) should have started at his 2 January 1979 indictments. Since we have already determined that defendant's arraignment was proper, this question is moot.

[6] Defendant's final, alternative speedy trial argument is that more than the statutory period of 120 days elapsed from his mistrial of 21 July 1979 until his second trial on 16 June 1980. G.S. 15A-701(a1)(4) allows the state 120 days from the declaration of a mistrial to try a defendant again. We note that there were 331 days between defendant's mistrial and his second trial. In order to complete the analysis necessary to determine whether defendant was denied a speedy trial under North Carolina law, we must again examine the G.S. 15A-701(b) exclusionary periods allowed by Judge Brewer who denied defendant's motion to dismiss. Judge Brewer found the following facts pertinent to defendant's present argument:

> 5. This case was scheduled for trial on the 5th day of November, 1979. On the 5th day of November, 1979, in the Superior Court of Chatham County before Judge Donald Smith, the defendant made a motion for a continuance. The basis for the defendant's motion was the unavailability of an essential witness for the defendant. The defendant's motion for a continuance was allowed on the 5th day of November, 1979. The witness became available by virtue of his recapture by authorities on or about the 3rd day of June, 1980.

> 6. As a part of the order allowing the defendant's motion for a continuance, Judge Smith entered the following Order. "It

is further ordered that a period of time between this date, November 5, 1979, and such time as a special session of Court may be scheduled shall be excluded from making all computations under the 120 day rule contained in subsection 7 of Chapter 15A of the General Statutes of the State of North Carolina."

7. A tentative special term of Superior Court was scheduled on the 28th day of January, 1980, but was cancelled by the Administrative Office of the Courts, acting under the authority of the Chief Justice of the State of North Carolina, because of the continued unavailability of the witness for the defendant, and because of legitimate scheduling conflicts precluding the appearance of the attorney for the State of North Carolina, Mr. Lester Chalmers.

8. Between January 1, 1980, and June 16th, 1980, there were two weeks of regularly scheduled Criminal Superior Court in Chatham County, February 11th and April 21st. During these two weeks, the Court was fully utilized for the trial of criminal cases, specifically ten days of actual Court during those two week sessions.

9. The Administrative Office of the Courts designated the 16th day of June, 1980, a regular term of Criminal Superior Court for Chatham County, as the appropriate week for the trial of this action. . . .

We have reviewed the evidence on which Judge Brewer based his findings of fact. We have found that defendant made no objection to the evidence and that there was competent evidence to support the findings of the trial judge. Those findings of fact are, therefore, binding and conclusive on this appeal. *State v. Stepney*, 280 N.C. 306, 185 S.E. 2d 844 (1972).

Defendant's exception to the order of Judge Brewer, therefore, raises the question of whether the trial court's conclusions of law were correct and were supported by the findings of fact. The pertinent conclusions of law made by the court were:

1. The period from November 5th, 1979 to June 16th, 1980, shall be excluded in computing the time within which the trial of these criminal offenses must begin.

. . .

State v. Sellars

3. Taking into account all excluded periods less than 120 days have expired since the declaration of the mistrial on the 21st day of June, 1979.

4. The defendant's motion for dismissal with or without prejudice for failure for the State to provide a speedy trial should be denied.

G.S. 15A-701(b)(3) clearly allows exclusion of time for delay occasioned by the unavailability of essential witnesses.[2] Similarly, G.S. 15A-701(b)(8)[3] allows the trial court to exclude time which elapses because the venue of the case is within a county where, due to a limited number of court sessions, the time requirements of G.S. 15A-701 cannot be met.

The trial court's first conclusion was, therefore, clearly supported by the findings of fact and within the framework of G.S. 15A-701. Its third and fourth conclusions legitimately follow. Defendant's final speedy trial argument is, therefore, overruled.

### Questions Related to Admission of Evidence

On this appeal, defendant brings forward five questions related to the trial court's admission of or alleged failure to admit certain evidence. First, defendant contends that Judge McKinnon erred in an order of 12 June 1979 in which he denied portions of defendant's discovery motion. He argues that Judge Martin had already ordered such discovery and that Judge McKinnon's ac-

---

2. G.S. 15A-701(b) allows the following periods to be excluded in computing the time within which the trial of a criminal defendant must begin:

(3) Any period of delay resulting from the absence or unavailability of the defendant or an essential witness for the defendant or the State. For the purpose of this subdivision, a defendant or an essential witness shall be considered

a. Absent when his whereabouts are unknown and he is attempting to avoid apprehension or prosecution or when his whereabouts cannot be determined by due diligence; and

b. Unavailable when his whereabouts are known but his presence for testifying at the trial cannot be obtained by due diligence or he resists appearing at or being returned for trial. . . .

3. (8) Any period of delay occasioned by the venue of the defendant's case being within a county where, due to limited number of court sessions scheduled for the county, the time limitations of this section cannot reasonably be met. . . .

tion, in effect, amounted to his overruling another superior court judge.

The record shows that two paragraphs of defendant's original Motion for Discovery of 8 February 1979 requested the state to

[d]ivulge in written or recorded form, the substance of any and all steps taken by law enforcement officers, investigators or the State . . . in making identification upon which the charges against defendant are based . . . [and to]

. . .

[p]rovide defendant a list of all witnesses known to the State who can or might give testimony in this case and designate the matters or facts upon which each of such possible witnesses can or might give testimony. . . .

On 5 March 1979, Judge Martin allowed portions, including these two, of defendant's motion. On 12 June 1979, Judge McKinnon heard defendant's motion to exclude certain evidence because of alleged noncompliance with defendant's discovery order. Judge McKinnon in his order, found that the state had sufficiently complied with defendant's first request quoted hereinabove, by its indication that the testimony of one police officer would reveal all the steps taken to allow the prosecuting witness to identify defendant and by its revealing that Don King might also testify as to defendant's identify. Judge McKinnon found that the state had furnished defendant with a list of all known witnesses, but, citing *State v. Hardy*, 293 N.C. 105, 235 S.E. 2d 828 (1977), he refused to order the state to comply with defendant's request to supply him with the facts upon which each state witness would testify.

Defendant's argument about these proceedings is twofold. First, he argues that one superior court judge may not overrule another superior court judge, as Judge McKinnon allegedly overruled Judge Martin. Second, defendant argues that the state, having failed to comply with Judge Martin's order, should have been barred from introducing evidence it refused to disclose to defendant.

This Court does not believe it necessary to rule on the issues defendant has attempted to raise. Defendant has failed to demonstrate to this Court any exception he took to the introduc-

tion of evidence he claims should have been barred. More importantly, defendant has made no showing at all that he was surprised by the evidence or that he was, in some other way, prejudiced by its introduction. His assignment of error is, therefore, overruled.

[7]  Defendant's second contention is that the trial court erred in refusing to hold *voir dire* examinations during the second trial in order to determine the admissibility of the identification testimony by the prosecuting witness and Mr. King.

We reject defendant's contention. At the first trial of defendant, complete *voir dire* examination of both the prosecuting witness and King had been conducted for the purpose of determining the admissibility of their eyewitness identification. At defendant's second trial, no *voir dire* hearings were necessary unless there was some showing by defendant that he could offer evidence that would be different from that given at the first hearing. *State v. Williams*, 33 N.C. App. 397, 235 S.E. 2d 86, *review denied*, 293 N.C. 258, 237 S.E. 2d 540 (1977).

It is clear from a reading of the record that defendant was unable to demonstrate to Judge Brewer that any new evidence would be forthcoming in a second set of *voir dire* examinations. We, therefore, find no error in Judge Brewer's denial of defendant's motion for those examinations.

From our ruling on this issue, it follows that the trial court did not err, as defendant claims, in denying defendant's motion to vacate the verdicts and order a new trial on the basis of error in refusing to hold these *voir dire* examinations.

[8]  Third, defendant contends that the trial court erred in admitting into evidence the in-court identification of defendant by the prosecuting witness and Don King. Defendant argues that the pretrial photographic identification procedures were so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification of defendant.

Convictions based on eyewitness identification at trial, following pretrial identification by photograph, will be set aside if the photographic identification procedure was so impermissibly suggestive that it gives rise to a substantial likelihood of irreparable misidentification at trial. *Simmons v. United States*, 390 U.S. 377,

88 S.Ct. 967, 19 L.Ed. 2d 1247 (1968); *State v. Jackson*, 287 N.C. 470, 215 S.E. 2d 123 (1975); *State v. Henderson*, 285 N.C. 1, 203 S.E. 2d 10 (1974), *death sentence vacated*, 428 U.S. 902, 96 S.Ct. 3202, 49 L.Ed. 2d 1205 (1976).

Defendant, prior to his first trial, moved to suppress the identification testimony of the prosecuting witness Mr. King. The court conducted a *voir dire* examination of both of these witnesses. The prosecuting witness testified that, when she observed defendant in the lobby of the motel, the lighting was fairly good. She was able to observe defendant face to face. Later, she was able to describe the defendant as being about five eleven, very slim, black, but light skin, with a moustache, a thin beard, and shaded glasses. When she was given a set of ten photographs by Alamance County Officer Porter, she was able to identify defendant as being the man who robbed and raped her. There was no evidence that Officer Porter suggested defendant's picture to the prosecuting witness. The prosecuting witness stated on *voir dire* that she "was sure of who he was" when she chose defendant's picture.

After considering the evidence on *voir dire*, the trial court found, in part, that on the night of 3 December 1978, the lobby of the Village Motel was well lighted; that the prosecuting witness was able to observe defendant and his accomplice three or four minutes at close proximity; that the prosecuting witness was able to describe defendant; that she selected his photograph from a set of ten ordinary photographs all depicting black males and that she did so without any suggestion by police officers. The trial court concluded that the pretrial identification procedure was not so impermissibly suggestive as to give rise to irreparable misidentification and that the prosecuting witness's in-court identification was of independent origin and was based on her observation of defendant on 3 December 1978.

Don King stated on a separate *voir dire* that he observed defendant in the lobby of the motel where lighting conditions were "not bright" but "not real low". He was able to describe defendant in sufficient detail to allow someone in the Sheriff's Department to draw a composite. When he was shown the set of ten photographs, no one suggested defendant's picture to him, but defendant's picture "caught . . . his eye."

At the close of this *voir dire*, the trial court again found that the witness had had time to observe defendant in a well-lighted area and that, without suggestion, he had been able to pick out defendant's picture from a set of ten photographs. The court's conclusion concerning this identification by King paralleled its conclusion concerning the prosecuting witness's identification.

Based on our review of the record and considering the totality of the circumstances, we find that the trial court did not err in its subsequent denial of defendant's motion to suppress the identification testimony of the prosecuting witness and King. The court's findings of fact were supported by competent evidence that the two witnesses were able to observe defendant for a period long enough and in a space well lighted enough to allow later identification. There was no evidence of suggestiveness. The witnesses were not told they *had* to identify one or any of the photographs. They never wavered in their identification. The trial judge's findings were based on competent evidence and are binding on appeal. *State v. Jackson*, supra.

Defendant's fourth issue regarding admission into evidence relates to certain photographs of defendant and of the victim of the crimes. Over defendant's objection, the state was allowed to introduce into evidence a photograph of defendant that was taken on 11 December 1978, the date of defendant's arrest. The defendant argues that the admission of the photograph into evidence was prejudicial error because, although it was a photograph covered by Judge Martin's order compelling discovery, the state had failed to provide defendant with a copy of it.

[9] We are not compelled to consider this assignment of error on appeal. At trial defendant gave specific grounds for his objection to the admission of this evidence. At one point, defense counsel stated that the photograph was not "relevant or proper being on December 11, 1978, or later. . . ." At another point, counsel objected on the grounds that the photograph was "not material to this case." Defendant did not inform the trial court that he was basing his objection to the admission of this evidence upon G.S. 15A-910(3). Defendant, therefore, failed to present to the trial court the grounds for exclusion he now argues. Defendant having made a specific objection at trial based on the relevancy and

materiality of the evidence, may not argue on appeal the statutory grounds. See generally, 1 Stansbury's N. C. Evidence § 27 (Brandis Rev. 1973). Even if the court should consider this assignment of error, there is no error. Under G.S. 15A-910(3), the trial court has discretion in determining whether to exclude certain evidence not disclosed pursuant to an order compelling discovery. Defendant has failed to show, nor can this Court find, any abuse of the trial court's discretion.

Defendant makes another assignment of error relating to the introduction of photographs of the wounds that the prosecuting witness sustained on the night of 3 December 1978. Defendant argues again that the photographs were not given to him pursuant to the pretrial discovery order and that, therefore, they should have been excluded. According to defendant, the trial court's allowing these photographs into evidence prejudiced the defendant, because they were inflammatory in nature and could have caused sympathy for the prosecuting witness and, therefore, for the state.

The photographs about which defendant complains do not appear as part of the record on appeal. Defendant, therefore, has not shown error. *State v. Samuel*, 27 N.C. App. 562, 219 S.E. 2d 526 (1975).

Finally, defendant assigns as error the refusal of the trial court to allow certain expert testimony of Dr. Robert Buckhout who had qualified, without objection, as "an expert in the field of psychological elements of eyewitness identification." The record shows that Dr. Buckhout had testified at length about the various factors, such as lighting, stress conditions, and lapse of time, which influence a person's identification of another person. He had also been allowed to testify as to the elements necessary for putting together a proper, non-prejudicial photographic lineup.

The question which defendant claims Dr. Buckhout was not allowed to answer was:

Q. Dr. Buckhout, I'll ask you if in this case the jury should find from the evidence that the law enforcement authorities, prior to submitting this group of photographs that I've handed you, State's Exhibit 26, a through j, had been given a description by one or more witnesses or individuals, that

> suspect was described as being a black male, age twenty-one, height about 5'10" tall, slender build, medium skin color, moustache, short afro, shaded glasses, and wearing a grey hooded jacket, do you have an opinion satisfactory to yourself as to whether or not the photos that I have handed you and just referred to meet the standards that you have testified to with respect to good testing, do you have an opinion?

The record shows that Dr. Buckhout was allowed to answer this question out of the presence of the jury. Thereafter, the jury returned, and the questioning of Dr. Buckhout resumed.

We have carefully studied the answer tendered by Dr. Buckhout out of the presence of the jury and his testimony after the jury returned. We see no difference in the substance of these two sets of testimony. Before the jury, Dr. Buckhout was able to testify in part, as follows:

> Yes, with respect to this group of photographs that I was handed that were marked Defendant's-State's Exhibit 26 a through j, I can evaluate that group of photographs with respect to the standards of fairness and suggestibility that I referred to. Proceeding with my evaluation of that group of photographs as a photo spread for identification purposes, referring to Exhibit 17 which is the standard, from this point on, we'll be concerned with how well the set of photographs provides a test given that the first photograph is that of the defendant because the major job is to assume that the other photos should match it so that it provides a fair test of memory.

> Under those circumstances, the other photos should match in as many ways as possible that key photograph of the suspect. And as I looked over these, grouped them on the major characteristics, the major features, the major feature that stood out, the something to match up to was the wearing of glasses. And the wearing of glasses in this particular case by the suspect himself, there are four other photographs of men wearing glasses. The others have no glasses and would not be considered to be a part of the test on the grounds that major features should be considered when you do that match-up job.

So that these photographs would fall off right away, making our multiple choice test one out of ten photographs in effect that would reduce it down to one out of five. And of these, we look at the other physical characteristics and see whether they match that of the defendant, and in my opinion they do not.

Some of the gentlemen in the pictures are different weight, age and different hair style. Hair style in particular would eliminate these two photographs, No. 8 and No. 10 because they are distinctly different from that of the defendant. This leaves us with one out of three. And even with these photographs, there are problems with them from a photographic point of view in that they are different photographically. The defendant is pictured against the wall facing it with a fairly bright light behind him. The other two gentlemen are portrayed in different poses; one of them is seated and is distinctively different from that of the defendant and is also showing a different skin tone, which would be another major feature, based upon the fact that this shows a lighter skin person.

His testimony concerning the photographic lineup did not stop here but continued for several more paragraphs.

After reviewing this line of testimony, this Court concludes that Dr. Buckhout *did* answer the question defendant posed and that defendant's assignment of error, therefore, has no merit.

### Jury Instructions

[10] Defendant makes six assignments of error and brings forward six arguments concerning the trial court's instructions to the jury. The defendant's first contention is that the court erred in referring to defendant's chief alibi witness John Wiley as "James Wiley" and that that error "could have likely been perceived by the jury as a discrediting" of defendant's alibi evidence. Defendant, however, failed to bring the matter before the trial court to seek a correction. As the Supreme Court pointed out in *State v. Willard*, 293 N.C. 394, 238 S.E. 2d 509 (1977), "[i]f the defendant deemed such variance as appears in the record to have been prejudicial to him, he should have directed this to the attention of the court in time for a correction prior to the verdict." *Id.* at 407, 238 S.E. 2d at 517.

[11]   Defendant's second argument concerns the trial court's erroneous instructions with regard to defendant's alibi evidence. In part, the court stated:

> Therefore, I charge, that if upon considering all the evidence in the case, including the evidence with respect to alibi, you have a reasonable doubt as to the defendant's presence at or participation in the crime charged, *you must find him guilty.* (Emphasis added.)

Of course, this *lapsus linguae* is erroneous. We believe, however, that, prior to jury deliberations, the trial judge corrected his misstatement and that that correction nullified any prejudice to defendant. The record shows that the judge stated:

> Ladies and gentlemen, one thing. It has been called to my attention that during my instructions relating to alibi, that there is some question as to what I said with regard to whether I said that if you have a reasonable doubt as to the presence of the defendant at or participation in the crime you may find him not guilty, or that I might by inadvertence have said, you may find him guilty. Whichever I said at that earlier time, it was my intent at that time and it is my intent now to instruct you, and my instructions to you are that, I charge if, upon considering all of the evidence in this case, including the evidence with respect to alibi, you have a reasonable doubt as to the defendant's presence at or participation in any of the crime charged he has made to that crime, you must find him not guilty.

In light of this correction and considering the complete set of instructions, especially those instructions dealing with the state's burden of proof, this Court finds no prejudicial error in this portion of the charge.

[12]   Defendant's third contention is that the trial court erred when it refused defendant's request that it instruct the jury that their recollection of the evidence was controlling and that, if it conflicted with summaries of evidence by the court or by the attorneys, the jurors were to rely on their recollection. Of course, defendant is correct in his assertion that the jury, in arriving at a verdict, must be governed by their recollection of the testimony. *State v. Litteral*, 227 N.C. 527, 43 S.E. 2d 84, *cert. denied*, 332

U.S. 764, 68 S.Ct. 69, 92 L.Ed. 349 (1947). In this case, our task is to determine whether the trial judge clearly outlined to the jury its responsibility for finding the facts. After reviewing the instructions, we conclude that the jury was sufficiently advised of that responsibility. At the beginning of its recapitulation of the evidence presented, the court stated:

> Now at this time, ladies and gentlemen, I'll be very brief. I'll briefly recapitulate for you what some of the evidence presented by the State and some of the evidence presented by the defendant in this case show. Now it is not my intent to recapitulate all the evidence. My summary of the evidence shall be extremely short. If my recollection of the evidence differs from yours, then disregard completely my recollection of the evidence and rely exclusively and entirely upon your own recollection of the evidence.

Near the end of this charge to the jury, the trial judge detailed the task of the jury in the following way:

> Now, members of the jury, you have heard the evidence in this case, for the arguments, the final speeches of the attorneys in the case, attorneys for the defendant, and the attorney for the State. You've heard the instructions of the Court. As I indicated to you during my instructions, I have not summarized all the evidence in this case. It is, however, your responsibility to consider all of the evidence whether it has been called to your attention or not, either by the Court or by the attorneys in their speeches to you. All of the evidence is important and it is your responsibility to consider what all the evidence is.
>
> .  .  .
>
> You, ladies and gentlemen, are the triers of fact and it is your sole, exclusive, promise and responsibility to find the true facts of these cases and to render a verdict reflecting the truth as you find it to be.

From the foregoing portions of the trial court's instructions, this Court concludes that defendant's argument has no basis, and we overrule his assignment of error.

[13]  Defendant's fourth contention concerning the judge's instructions to the jury is that there was error in the judge's

recapitulation of the evidence surrounding the prosecuting witness's rape. The record shows the judge charged the jury as follows:

> The State further offered evidence tending to show that she did not consent to this sexual relation.

> That the reason she submitted to sexual relations was because of her fear of the pistol which he had threatened her with earlier and that she would be hurt with that pistol.

Defendant argues that there was no testimony by the prosecuting witness that the reason she submitted to sexual relations was that she feared defendant's use of the pistol. We do not agree.

While there was no direct statement by the prosecuting witness that she submitted to defendant's sexual attack because she was afraid of the gun, there was ample circumstantial evidence that defendant had used the gun first to rob her and, then, to get her into the car. The evidence was clear that defendant had the gun in the car, and that the prosecuting witness was scared because of the gun. Defendant's argument has absolutely no merit. We would point out also that the jury, relying on its own collective recollection of facts, found the defendant guilty of second degree rape and, therefore, must have ruled out the use of a deadly weapon.

[14] Defendant's fifth assignment of error relates to the trial court's refusal to instruct the jury about the question of defendant's identification. Defendant argues that, since the identification of the defendant as the perpetrator of the crimes was a substantial issue, the judge, in summarizing the evidence, should not have placed defendant at the scene of the crime without also raising defendant's contention that defendant was improperly and erroneously identified by the prosecuting witness.

Under North Carolina law, a trial judge is not required to state the contentions of the parties, but when he does give the contention of the state on a particular aspect of the case, it is error to fail to give defendant's opposing contention which arises out of the evidence on the same aspect of the case. *State v. Thomas*, 284 N.C. 212, 200 S.E. 2d 3 (1973). After reviewing the instructions as a whole we are convinced that the trial court gave an adequate summary of defendant's alibi evidence and of the

state's burden to prove beyond a reasonable doubt that defendant was the one committing the alleged crimes. Four times, once for each charge against defendant, the court noted that defendant had put on evidence tending to establish that he was not at the scenes of the crimes on 3 December 1978. As to the identification question, the court went to great lengths to outline the problem and the state's burden of proving defendant to be the man who robbed, kidnapped, raped, and assaulted the prosecuting witness:

> Now, I instruct you, ladies and gentlemen, that the State of North Carolina has the burden of proving the identity of the defendant as the perpetrator of the crime charged beyond a reasonable doubt, as I defined that term to you earlier. This means that you, the jury, must be satisfied beyond a reasonable doubt that this defendant was the perpetrator of the crime charged before you may return a verdict of guilty.
>
> The main aspects of identification are the observation of the offender by the witness before, and at the time of, the offense, or after the offense.
>
> In examining the testimony of the witness as to his or her observation of the perpetrator before or at the time of the crime, you should consider the relevant facts such as the capacity of the witness to make an observation, through his or her senses; opportunity of the witness to make an observation; and such details as lighting, the quality of the lighting of the scene of the alleged crime at the time of observation, the mental and physical condition of the witness; the length of time of the observation; and any other condition or circumstance which might have aided or hindered the witness in making his or her observation.
>
> In examining the testimony of a witness as to his or her observation after the crime, you should consider relevant factors such as the capacity of the witness to make such an observation, through his or her senses; the opportunity of a witness to make an observation; the details as to lighting; the mental and physical condition of the witness; the length of time of the observation; and any other condition or circumstance which might have aided or hindered the witness in making the observation. However, your consideration must go further. The identification of this defendant by the

witness as the perpetrator of the offense must be purely the product of the witness' recollection of the offender and derived only from the observation made at the time of the offense. In making this determination you should consider the manner in which the witness was confronted with the defendant after the offense, the conduct and comment of the persons in charge of the photographic identification procedure and any circumstances which may have influenced the witness in making an identification, which either reinforced the accuracy of the witness' identification of the defendant or which cast doubt upon it.

The identification witness is a witness like any other. That is, you should assess and determine the credibility of the identification witness in the same way you would any other witness in determining the adequacy of his or her observation and his or her capacity to observe.

If defendant found these instructions of the court deficient, he should have brought his objections before the trial judge in order to allow him to make any required corrections. In *State v. Davis*, 297 N.C. 566, 256 S.E. 2d 184 (1979), the Supreme Court held that defendant was not entitled to complain of the trial court's failure to detail fully the inconsistencies of the state's evidence since defendant failed to request a more detailed statement of the contentions. In the case *sub judice*, defendant likewise is not entitled to complain.

[15]  Defendant's final contention concerning jury instructions is that the trial court erred in failing to instruct the jury on the charge of kidnapping[4] in a manner consistent with the indictment and with defendant's written request. The kidnapping indictment

---

4. G.S. 14-39(a), under which defendant was charged, states:

Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

(1) Holding such other person for ransom or as a hostage or using such other person as a shield; or

reads in part that defendant "unlawfully and wilfully did feloniously kidnap [the prosecuting witness] . . . for the purpose of using her as a shield *and* for the purpose of facilitating the flight of the defendant. . . ." (Emphasis added.) The record shows that the trial court, in submitting the elements of kidnapping, failed to instruct the jury on defendant's use of the prosecuting witness as a shield. From his instructions it appears to this Court that the trial judge determined that there was insufficient evidence to go to the jury on the question of defendant's use of the prosecuting witness as a shield and that he, therefore, dropped this allegation from his charge. We believe that this decision by the trial judge was proper.

In an analogous situation, in *State v. Boyd*, 287 N.C. 131, 214 S.E. 2d 14 (1975), the Supreme Court held that, even though defendant was charged with breaking and entering with intent "to steal, take and carry away *and* with intent to commit the crime of Murder. . .," *Id.* at 144, 214 S.E. 2d at 22, the state was required to prove only one intent. As the *Boyd* opinion pointed out, analogous rulings have been made in cases in which defendants have been charged with breaking and entering under G.S. 14-54:

> It has long been the law in this State in prosecutions under this statute and its similar predecessors that where the indictment charges the defendant with breaking *and* entering, proof by the State of either a breaking *or* an entering is sufficient; and instructions allowing juries to convict on the alternative propositions are proper. (Citations omitted.)

*Id.* at 145, 214 S.E. 2d at 22.

We hold that indictments under the kidnapping statute may allege one or several of the purposes set forth in G.S. 14-39(a), but that the state need prove only one purpose in order to sustain its burden of proof as to that element of the crime. Similarly, when a trial judge determines that the state has failed to prove one or more of the purposes of kidnapping alleged in the indictment, he

---

(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony; or

(3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person.

may properly refuse to instruct on that purpose or those purposes.

In the present case, the jury's finding that defendant was guilty of taking the prosecuting witness against her will for the purpose of facilitating his flight is entirely within the statutory scheme. Defendant's assignment of error related to this charge is overruled.

## Other Post-Evidence Questions

We next consider defendant's allegations that the trial court erred both in denying defendant's motions to dismiss at the close of state's evidence and at the close of all the evidence and in denying defendant's motion to vacate the verdicts of the jury. Defendant's two assignments of error are related to the same general argument, which is that there was insufficient evidence on which to convict defendant. Defendant separately argues his case for each count with which he was charged.

In determining whether to grant a motion to dismiss at the close of the evidence, the trial court must consider the evidence in the light most favorable to the state, and the state is entitled to the benefit of every reasonable inference to be drawn from it. *State v. Vestal*, 278 N.C. 561, 180 S.E. 2d 755 (1971), *cert. denied*, 414 U.S. 874, 38 L.Ed. 2d 114, 94 S.Ct. 157 (1973). In order for the state to withstand a motion to dismiss, there must be substantial evidence against the accused on all material elements of the offense charged. *State v. Board*, 296 N. C. 652, 252 S.E. 2d 803 (1979). With these rules in mind, we shall review defendant's specific arguments.

[16] In the kidnapping indictment, defendant was charged with kidnapping the prosecuting witness "for the purpose of using her as a shield and for the purpose of facilitating the flight of the defendant. . . ." Defendant argues that, since there was no evidence that defendant used the prosecuting witness as a shield or for the purpose of easing his flight, the state failed to prove all of the elements of the offense of kidnapping as charged. After reviewing the evidence, this Court concludes that there was sufficient circumstantial evidence as to the purpose of the prosecuting witness's kidnapping to withstand defendant's motions to dismiss and to vacate the verdicts. State's evidence tended to show that

defendant forced the prosecuting witness to go with him and his companion after they had robbed her. While there was no evidence that defendant actually used the prosecuting witness as a shield, it was entirely reasonable for the jury to believe that he would have had the need arisen. Furthermore, as the state points out in its brief, obviously defendant and his companion were not going to leave the prosecuting witness at the motel to call the police. In that sense, defendant's taking her was for the purpose of facilitating his flight, or at least it was reasonable for the jury to conclude that it was.

[17]  As to the rape charge, defendant alleges there was no evidence as to defendant's use of deadly force and, therefore, no evidence to convict defendant of first degree rape. According to defendant, the court's erroneous refusal to dismiss the first degree rape charge resulted in the jury's being influenced to find defendant guilty of second degree rape. This Court finds that, although there was no evidence that defendant raped the prosecuting witness while wielding a gun, the record is replete with sufficient references to the gun - - - at the motel, in the automobile, and, finally, outside the automobile when defendant shot the young woman four times — that the court's charge was proper. Defendant's argument is specious.

As to all four charges, defendant makes the same argument that there was insufficient evidence as to defendant's identity to allow the case to go to the jury or to allow the verdicts to stand. He bases this argument on his earlier contention that the eyewitness identification testimony of the prosecuting witness and King should have been suppressed on the grounds of impermissibly suggestive pretrial identification procedures. This contention we have already rejected. Defendant's argument here is also rejected.

Defendant assigns as error the sentences that the trial court imposed upon him.

The record shows that, prior to defendant's being sentenced, counsel for the state advised the court (1) that defendant had been convicted of armed robbery in Person County in 1978 and that he was sentenced to not less than eight nor more than fifteen years imprisonment; and (2) that defendant was thereafter convicted in Rockingham County of armed robbery for which he had

received a sentence of not less than forty nor more than sixty years imprisonment. In the present armed robbery case, the trial judge imposed a term of not less than forty nor more than sixty years imprisonment, this sentence to run consecutively with defendant's sentence imposed in Rockingham County for armed robbery. For his conviction of second degree rape, defendant was sentenced to thirty years, running consecutively with the sentence imposed for armed robbery. The trial court consolidated judgment for the kidnapping and the assault with a deadly weapon with intent to kill inflicting serious bodily injury charges and sentenced defendant to twenty years, to run consecutively with the sentence imposed for rape.

Defendant argues that the prison sentences and their being imposed consecutively constituted cruel and unusual punishment in violation of the Constitution of North Carolina and of the United States Constitution. Defendant's argument has no merit.

[18]   A sentence of imprisonment within the maximum authorized by statute is not cruel or unusual punishment unless the punishment provisions of the statute itself were unconstitutional. *State v. Mitchell*, 283 N.C. 462, 196 S.E. 2d 736 (1973). The punishment imposed in each of defendant's cases was within statutory limits and, therefore, proper. As to the imposition of consecutive terms, the North Carolina Supreme Court has specifically approved consecutive sentences and has rejected arguments that such sentences are cruel and unusual punishment. *Id.*

Defendant's final assignment of error, relating to the entry of judgments against him, is based upon arguments presented earlier in his brief. We have rejected these arguments and, hence, find no basis for his final assignment of error.

In defendant's trial, this Court finds

No error.

Judges MARTIN (Robert M.) and WHICHARD concur.